R. R., Plaintiff,

v.

DEPARTMENT OF the ARMY,
Defendant.

Civ. A. No. 79–0871.

United States District Court,
District of Columbia.

Jan. 15, 1980.

Andrew H. Wortzel, Arlington, Va., Frederic J. Gross, Haddonfield, N. J., for plaintiff.

Scott T. Kragie, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Plaintiff,[1] a former serviceman discharged in 1951 for psychiatric reasons, brings this action to correct alleged substantive errors in his Army medical records. He seeks not only correction of the Army's records but also damages allegedly attributable to the Army's failure to amend them. Specifically, he claims he has been damaged by the refusal of the Veterans Administration ("VA"), in reliance on Army records, to award him full benefits to which he believes he is entitled, and which he has sought from the VA in nine separate proceedings over the last 28 years.[2] The Court has jurisdiction both under the Privacy Act, 5 U.S.C. § 552a(g)(1) (1976), and the Administrative Procedure Act, 5 U.S.C. §§ 701–06 (1976).

In prior proceedings before the Army Privacy Review Board ("APRB") and the Army Board for the Correction of Military Records ("ABCMR"), plaintiff has suggested but been denied specific amendments, deletions and substitutions in his Army records, all of which were designed to correct the particular documentation on which the VA apparently largely based its eligibility determinations. The matter is now finally before the Court on cross-motions for summary judgment. The issues have been fully briefed and argued, and an extensive administrative record submitted. No matters of material fact are in dispute.

### I.

The essential uncontested facts are not complicated. In 1951, plaintiff, who was

---

1. Plaintiff requests to remain anonymous in this action. All records identifying plaintiff by name, address, or telephone number have been placed under seal by Order.

2. The VA, through its Board of Veterans Appeals, denied plaintiff's applications for disability compensation in October, 1951, February, 1953, February, 1957, December, 1965, November, 1966, February, 1968, April, 1972, and March, 1975. In October, 1977, the VA granted disability compensation effective March 25, 1976, but denied compensation for the period from plaintiff's discharge in May, 1951, through March 25, 1976. Earlier the VA had awarded plaintiff a substantially lower stipend as a "disability pension" effective in 1960.

born in Puerto Rico and had learned to speak halting English, served four months in the United States Army.[3] Before entering the service, he completed a medical history in which he claimed no past psychiatric treatment or hospitalization. No psychiatric defect was noted at his entrance examination. In February, 1951, plaintiff injured his left knee and was hospitalized in the orthopedic department of an Army hospital. When hospital staff could find no organic cause for his apparent knee pain, they transferred him to a psychiatric ward for observation. He remained there under supervision of psychiatric personnel until his discharge from the service in May. Plaintiff's treating psychiatrist, Major Hladky, was also a member of the medical board that formally recommended his discharge. Dr. Hladky's recommendation was that plaintiff be discharged by reason of a pre-existing mental condition, *i.e.*, chronic schizophrenia, that was neither caused nor aggravated by his tenure in service.[4] This conclusion was in effect adopted by the medical board.[5]

In diagnosing plaintiff's mental condition, Dr. Hladky relied on observations of the patient's behavior and on information about his social history obtained by questioning plaintiff through translators during his hospitalization. Considerable biographic detail supplied by plaintiff supported the medical conclusion that his mental disorder originated and flourished prior to his induction. Specifically plaintiff asserted through an interpreter that he had quit school in third grade to stay home with his mother, that he had always stayed with her, that he received psychiatric treatment as a child in Puerto Rico, that he had no history of gainful employment and no English language ability, and that his obvious stutter was a lifelong speech defect.[6]

New evidence obtained over a period of many years effectively negates this social history. From employment records, Social Security records, letters from school and mental health administrators in Puerto Rico, and the sworn testimony of plaintiff's family and acquaintances, a different picture has emerged. According to this subsequent data which is not essentially disputed by defendant, plaintiff graduated from sixth grade, he was in Chicago at the time of his induction examination while his parents resided in New York, he had an extensive work history from the time he left school until induction was imminent, he was never treated for mental disorder while in Puerto Rico, he had a modest English language ability at the time of induction, and he suffered from no speech impediment prior to January 11, 1951.[7] As this new evidence was added to plaintiff's official files, no deletions or other changes were made in the 1951 medical records, which still contain the original patient history relied on by Dr. Hladky.

Plaintiff petitioned the ABCMR in 1974, seeking to correct his medical record to reflect a service-related mental condition. The matter was referred to the Surgeon General of the Army for a medical opinion. Although the Surgeon General questioned the reliability of the original patient history and concluded that under present standards plaintiff's condition would be considered service-related, the ABCMR ultimately refused to correct the records, citing *inter alia* the "more persuasive" original findings and the numerous prior occasions on which the VA had denied plaintiff's claim of service-relatedness.[8] Plaintiff's appeal to the APRB, for amendments to eliminate inaccuracies in his 1951 records, was likewise unsuccessful. The newly developed information had been added to plaintiff's Army records, and APRB concluded that the original records accurately showed what had

---

3. Plaintiff was inducted January 11, 1951, and discharged May 18, 1951.

4. *See* Defendant's Exhibit 2, 59–60, 83–84, or 155–56.

5. *See* Defendant's Exhibit 2, 58, 82, or 154.

6. *See* Defendant's Exhibit 2, 46–49.

7. *See* Defendant's Exhibit 2, 10–25.

8. *See* Defendant's Exhibit 1, 166–70.

happened at the time. In addition, the Privacy Board held that corrections of errors in medical judgment were not appropriate under the Privacy Act.[9]

During this same period, plaintiff's counsel contacted Dr. Hladky, now in private practice, and questioned him in some detail on the extent to which his 1951 diagnosis might have been altered had he known plaintiff's true social history. While understandably reluctant to fix a time certain for the origin of plaintiff's schizophrenic condition, Dr. Hladky ventured the opinion that the illness was in all probability aggravated during, though not caused by, military service.[10] Dr. Hladky's revised judgment was added to the official military record, along with the Surgeon General's 1976 opinion. In addition, plaintiff's records were expanded to include the opinion of an independent medical expert who examined the entire record and concluded *inter alia* that plaintiff's condition "became more manifest during military service."[11]

## II.

█ It is settled that this Court cannot review factual or legal decisions reached by the Board of Veterans Appeals in the course of administering the benefits legislation. *See* 38 U.S.C. § 211(a) (1976); H.R. Rep. No. 1166, 91st Cong., 2d Sess., 8–11 *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 3723, 3729–31. *See generally Johnson v. Robison*, 415 U.S. 361, 367–73, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). Neither the professional judgments nor the financial resources of the VA are at issue here. Instead, plaintiff attacks the Army for allowing discredited facts and judgments about his condition to persist in the official record. He argues that under the Privacy Act he has a right to declaratory relief ordering the revision or expungement of substantive errors in his Army records. *See* 5 U.S.C. § 552a(g)(1)(A), (C) (1976). More-

over, he claims a right to damages under that Act because the Army's refusal to correct its records was knowing and intentional, and the flawed records have consistently prejudiced fairness in decisionmaking at the VA. *See* 5 U.S.C. § 552a(g)(4) (1976). Alternatively, plaintiff claims that the ABCMR acted unlawfully in its arbitrary and capricious refusal to adjust his records, and that the Army must award him, *nunc pro tunc*, the benefits he would have enjoyed had his mental disorder not been mischaracterized in the first instance.

Under the Privacy Act, each government agency compiling records on individuals is obligated to ensure that the information it retains is accurate, relevant, timely and complete. 5 U.S.C. § 552a(e)(5) (1976). Accuracy of government-recorded personnel information is particularly important in our complex and bureaucratically-interrelated society, where an individual's rights and benefits may well be influenced or determined by what some government agency has to say about him. The prejudice resulting from inaccuracy may affect determinations reached by third parties, public or private, as well as those made by the recordkeeping agency. Of course, no individual is entitled to shape or color such information according to his own whims or preferences. On occasion accuracy is achieved only by allowing a disputed question of fact or judgment previously recorded to remain in the record, qualified by subsequent data. On the other hand, it may be necessary to eliminate clear mistakes of fact or irresponsible judgment from an individual's file so as not to prejudice prospects for a fair determination of his rights or benefits.

█ The language of the Act establishes that an individual may bring a civil action to compel the correction of inaccurate records. *See* 5 U.S.C. § 552a(g)(1) (1976). Although defendant would confine the

---

9. *See* Plaintiff's Exhibit 14, letter of March 23, 1977.

10. *See* Plaintiff's Exhibits 1–3, 17, letters of October 21 and 29, and November 16 and 23, 1976.

11. This independent expert was obtained by the Board of Veterans Appeals. For his detailed answers to a series of specific questions, *see* Plaintiff's Exhibit 4(b), 5–8.

scope of this cause of action to amending purely factual misrepresentations, the Court does not so narrowly interpret the statute. Remedial legislation should be liberally construed in order to effect its obvious purpose. In this instance, the statute vests broad discretion in a district court to ". . . order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct." 5 U.S.C. § 552a(g)(2)(A) (1976). It would defy common sense to suggest that only factually erroneous assertions should be deleted or revised, while opinions based solely on these assertions must remain unaltered in the individual's official file. An agency may not refuse a request to revise or expunge prior professional judgments once all the facts underlying such judgments have been thoroughly discredited. This position is reinforced in the Act's legislative history, where there are clear indications that insidious rumors and unreliable subjective opinions as well as simple factual misrepresentations fall within the ambit of the Act's strictures. *See e. g.,* 120 Cong.Rec. 36646–57 (Nov. 20, 1974) (remarks of Rep. Horton at 36646; Remarks of Rep. Gude at 36647; Remarks of Reps. Erlenborn and Goldwater at 36656–57).

▪ The conclusion that Congress both authorized actions for expungement or revision and intended that such actions apply to errors of judgment or opinion is supported by the relevant case law. Even beyond the domain of the Privacy Act, it is well settled that courts in their equitable discretion may order inaccuracies removed from government records where necessary to vindicate rights secured by statute or by the Consti-

tution. *See Chastain v. Kelley,* 167 U.S. App.D.C. 11, 14–15, 510 F.2d 1232, 1235–36 (D.C.Cir. 1975); *Paton v. LaPrade,* 524 F.2d 862, 868 (3d Cir. 1975). That the Privacy Act contemplates such expungement and not merely redress by supplement is fairly implicit in the decisions of this and other circuits. *See Schuler v. Department of State,* No. 78–1797 (D.C.Cir. Sept. 7, 1979) (slip op. at 9–10), *vacated on other grounds* (Jan. 9, 1980); *White v. Civil Service Comm.,* 191 U.S.App.D.C. 190, 589 F.2d 713 (D.C.Cir. 1978), *cert. denied,* —— U.S. ——, 100 S.Ct. 58, 62 L.Ed.2d 39 (1979); *Churchwell v. United States,* 545 F.2d 59 (8th Cir. 1976). The proposition that judgmental or evaluative matters are not beyond the purview of the Privacy Act has been tacitly accepted in some instances, *e. g., White v. Civil Service Comm., supra,* and expressly approved in others, *e. g., Turner v. Department of the Army,* 447 F.Supp. 1207, 1213 (D.D.C.1978), *aff'd mem.,* 193 U.S.App.D.C. 218, 593 F.2d 1372 (D.C.Cir. 1979). Plaintiff is therefore authorized to seek amendment of both inaccurate biographic data and unsupported diagnostic conclusions relating to his 1951 hospitalization.

Whether or not expungement or revision is appropriate on the facts of this case is, however, a separate question.[12] At oral argument, plaintiff specified his proposed deletions and substitutions in the official record. These included both correction of the particular elements mischaracterized as truthful social history and also revision of medical judgments to reflect that plaintiff's mental illness was aggravated in the line of duty.[13] In assessing defendant's refusal to

**12.** The Court rejects defendant's threshold argument that this action is barred under the applicable statute of limitations. Plaintiff's cause of action for damages accrued only when the VA denied him benefits in reliance on the uncorrected Army records. The denial occurred in October, 1977; the action was filed in March, 1979, well within the two-year limit established by 5 U.S.C. § 552a(g)(5). Even if, as defendant urges, the cause of action arose on March 23, 1977, when the APRB issued its final denial, the action was brought within the two-year period since it was filed on March 23,

1979. *See* Rule 3, Fed.R.Civ.P. *See generally Bates Mfg. Co. v. United States,* 303 U.S. 567, 58 S.Ct. 694, 82 L.Ed. 1020 (1938); 2 Moore's Federal Practice, ¶ 3.07[6] (2d ed., 1979).

**13.** The precise words in the Army records that plaintiff wants deleted or revised are as follows:

(a) *Defendant's Exhibit 2, pp. 58, 62, 82:* delete "Patient has always been very dependent on his mother—stayed home with her and has not lived in a reality situation."

expunge or revise any portion of the 1951 medical files, the Court has carefully examined the entire record consistent with its obligation under the applicable *de novo* standard of judicial review. *See* 5 U.S.C. § 552a(g)(2)(A) (1976).

■ The Court finds that the factual assertions in the 1951 records concerning plaintiff's dependency on his mother, his lack of education, his failure to hold a job and his prior treatment for a mental condition have been shown conclusively to be false. Plaintiff has submitted persuasive, uncontroverted evidence refuting these assertions. All factual references to his putative family and pre-service history will be either deleted or re-characterized as the evident product of his disturbed mental condition or of errors in translation, in accordance with the proposals made by plaintiff's counsel during oral argument.[14]

■ With respect to the 1951 diagnostic judgments, the solution is more difficult. Although it is now established that the original medical opinion was based at least in part on factually erroneous statements, Dr. Hladky apparently did not rely exclusively on the discredited social history when diagnosing plaintiff's condition. It is conceivable that based on patient observation by himself and others, and in light of then-accepted medical principles,[15] Dr. Hladky might still have reached the opinion that plaintiff's condition resulted from a gradual lifelong pattern unrelated to his military service. Where matters of professional judgment such as this are concerned, and the factual predicates for such opinions are diverse, it is next to impossible to reconstruct the process by which the opinion was formulated and determine what the opinion would have been. This difficulty is particularly evident where, as here, the opinion was formulated in good faith and was based on observations made nearly 30 years ago. Under such circumstances, the challenged medical judgments are not so thoroughly discredited as to justify their deletion or contradiction in the record.

■ Plaintiff's further claim for damages under the Privacy Act based on the VA's reliance upon faulty records must be rejected. What plaintiff apparently seeks to accomplish is to circumvent the statutory provisions making the VA's determinations of benefits final and not subject to judicial review. *See* 38 U.S.C. § 211(a) (1976). In the many proceedings brought by plaintiff before the VA, that agency has been made fully cognizant of plaintiff's position, including all the factual errors in the Army records and the many qualifications that those errors place upon the validity and strength of Dr. Hladky's opinion given at time of discharge. The Army decision to supplement its records with the new information brought to it by plaintiff, rather than to effectuate certain physical corrections, substitutions and adjustments in those records, has not been shown to have had a causal relation to the VA's ultimate

(b) *Defendant's Exhibit 2, pp. 58, 62, 82:* revise "LOD:No.EPTS" to "LOD:Yes" ["LOD" is line-of-duty; "EPTS" is existed-prior-to-service].

(c) *Defendant's Exhibit 2, pp. 58, 82:* revise "Proximate result of active duty or inactive duty training . . . . . . No" to "Proximate result of active duty or inactive duty training . . . . . Yes"; delete "Patient be separated from service via SR 615–360–40"

(d) *Defendant's Exhibit 2, p. 59 (and elsewhere):* revise "Family and Past History" as "Claimed History . . . Cannot be Verified . . . Apparently the Product of Patient's Disorder."

(e) *Defendant's Exhibit 2, p. 60:* in penultimate paragraph, delete "Patient has always been very dependent on his mother—stayed home with her and has not lived in a reality situation."; in final paragraph, revise "via SR 615–360–40 since he has been in the service less than six months and his condition was not caused or aggravated by the service." to ". Condition incurred or aggravated in service."

14. The particular deletions and revisions thus approved appear in note 13, *supra*, at (a); (d); and (e) (penultimate paragraph only).

15. Under the 120-day rule, which the Army followed in 1951, a serious mental disorder that surfaced within four months of entry into military service was assumed to have existed prior to service, *i. e.* EPTS, absent persuasive evidence to the contrary. Today this assumption is no longer operative. *See* Plaintiff's Exhibit 16, 4 (testimony of Colonel Johnson at APRB meeting, Feb. 3, 1977).

determination. Indeed, there is not sufficient evidence that even had the records been adjusted entirely as plaintiff now demands, this would have triggered any different award by the VA. The claim for damages is accordingly too speculative.

■ In view of the changes in the records here ordered, plaintiff is free once again to raise his claims before the VA. It in turn is free to change its ruling as it may deem fit on the basis of the now-corrected social history. *See* 38 C.F.R. § 19.155 (1979). If erroneous conclusions were reached due to the former posture of the records, the VA's own careful reconsideration can remedy prior prejudice. For the Court to speculate as to how the VA would have determined these issues and base damage awards thereon would improperly interfere with the clear congressional intent to vest unreviewable discretion in the hands of the VA itself. *See generally Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Cunningham v. United States,* 549 F.2d 753 (Ct.Cl.1977).

■ Finally, plaintiff's argument that the ABCMR unlawfully abused its discretion in not correcting his diagnosis[16] must fail. The standard of review here is more limited than the *de novo* approach sanctioned by the Privacy Act. In order to reverse, the Court would have to find that the ABCMR's decision was arbitrary, capricious or without foundation in the record. *See Knehans v. Alexander,* 184 U.S.App. D.C. 420, 566 F.2d 312 (D.C.Cir. 1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978); *Horn v. Schlesinger,* 514 F.2d 549 (8th Cir. 1975). This the Court cannot do. Even if substitutions and deletions in the medical files were permissible, they were not the required or the only possible mode of proceeding. Following a full evidentiary hearing, the ABCMR determined that plaintiff's files had been sufficiently supplemented and that the 1951 diagnosis need not be expunged. This decision was not without rational support in the record.

It remains the case that the very doctor whose professional opinion was essential to the original discharge recommendation has now revised his judgment in the light of new evidence. This reappraisal, while not effective as a repudiation, must be viewed along with the opinions of the two impartial experts who identified a clear worsening of plaintiff's condition during his period of military service. There is also now a complete absence of evidence that plaintiff displayed any pre-service symptoms of mental disorder. Although the 1951 diagnosis cannot be expunged, the Court views its continuing reliability as open to serious question. A renewed application to the VA may now be successful.

Plaintiff's motion for summary judgment is granted with respect to amending the factual errors in his medical records, as set forth in note 14, above. In all other respects plaintiff's motion is denied; defendant's motion for summary judgment is granted except as to the aforementioned factual errors.

SO ORDERED.

---

16. Plaintiff also challenges as arbitrary and capricious the ABCMR's refusal to correct factual inaccuracies. Because the amendment of plaintiff's files concerning his social history has already been ordered, it need not be addressed here.