**In re Phillip MORRIS, Appellant.**

**No. 83–594.**

District of Columbia Court of Appeals.

Argued May 1, 1984.

Decided Sept. 24, 1984.

Laurie Davis, Washington, D.C., with whom James Klein, Public Defender Service, Washington, D.C., was on the brief, for appellant.

Joan L. Goldfrank, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before FERREN and ROGERS, Associate Judges, and PAIR, Associate Judge, Retired.

ROGERS, Associate Judge:

This appeal arises under the D.C. Hospitalization of the Mentally Ill Act (Act), (D.C.Code §§ 21–501, –592 (1981)). Appellant assigns as error the trial court's refusal to declare invalid his initial detention pursuant to an application which failed to comply with the Act. He also requests this court to order Saint Elizabeth's Hospital to amend its records to reflect that the initial detention was illegal and that everything flowing therefrom is null and void. We hold that the initial detention was null and void and remand the case to the trial court for entry of an order to the Hospital directing correction of its records.

## I.

A police officer brought appellant to Saint Elizabeth's Hospital on April 21, 1983, after his family had summoned the officer and given him an Application for Emergency Hospitalization which was signed by appellant's physician, Dr. Bukatman. D.C.Code § 21–521. In the application Dr. Bukatman stated that he had found appellant was suffering from paranoid schizophrenia, hearing voices and fighting with his family, and that in his opinion appellant believed various people were trying to harm him. The police officer submitted this application to the Hospital. Dr. Henry Pope, a psychiatrist on the Hospital's admissions staff, examined appellant the same day, and substantially corroborated Dr. Bukatman's diagnosis. On the basis of this information, the Hospital filed a petition on the following day in the D.C. Superior Court for an order to permit the Hospital to retain custody of appellant for a maximum of seven days in order to perform emergency observation and diagnosis. D.C.Code § 21–523. The trial court, upon *ex parte* review of the petition, Dr. Pope's admission note, and Dr. Bukatman's application, granted the Hospital's petition on April 25, 1983, and advised appellant of his right to a hearing under § 21–525, and appointed counsel.

Appellant requested a hearing to determine probable cause for his further detention, which was scheduled for April 27, 1983. A probable cause determination was never made, however. Instead, on April 27, appellant challenged the legality of his initial detention and urged the trial court to reconsider its *ex parte* order approving his detention for seven days. As grounds therefor appellant demonstrated that Dr. Bukatman's application was suspect by submitting an affidavit in which Dr. Bukatman stated that he had not seen appellant since April 7, 1983, when he had prepared the Emergency Hospitalization Application and had given it to appellant's sister, and had not spoken to the police about taking appellant into custody. Inspection of Dr. Bukatman's application indicated that the date of the application had been altered.[1]

---

1. *The application was dated April 22, 1983, the day* after *the police took appellant to the Hospi-* tal. No suggestion is made that the date was changed after the application was presented to

Appellant contended, therefore, that his initial detention was illegal under § 21–582(b), which provides:

> A petition, application, or certificate of a physician may not be considered unless it is based on personal observation and examination of the alleged mentally ill person made by the physician not more than 72 hours prior to the making of the petition, application, or certificate. The certificate shall set forth in detail the facts and reasons on which the physician based his opinions and conclusions.

The trial court agreed that the Bukatman application was improper, but ruled, relying on *Williams v. Meredith*, 407 A.2d 569, 574 (D.C.1979), that the impropriety could be cured by holding a hearing to determine whether there was probable cause to hold appellant for further observation and diagnosis at the Hospital. Appellant's counsel declined to participate in a probable cause hearing, and waived appellant's right to a hearing within 24 hours of a request, indicating her intent to petition this court for a writ of mandamus. On April 29, 1983, appellant's counsel filed the petition, which was denied by order of this court on May 6, 1983.[2] Thereafter appellant withdrew his request for any probable cause hearing and filed this appeal. On May 8, 1983, the Hospital changed appellant's legal status from an emergency non-voluntary patient to a voluntary patient, after determining that he was no longer dangerous because of mental illness.[3] The Hospital discharged appellant in September 1983, placing him on convalescent leave.

## II.

We must initially determine whether this case is moot because of appellant's status as a voluntary patient and discharge. The Hospital contends that appellant "has no present interest in whether his emergency hospitalization was lawful." Appellant contends that he will suffer continuing collateral consequences from his involuntary hospitalization and that this case "presents questions of substantial importance which are likely to recur and which, by their very nature, are effectively impossible to reach while the emergency hospitalization is taking place;" such collateral consequences include his right to serve on a jury, obtain a driver's license or a gun permit and vote, as well as the social stigma associated with an involuntary hospitalization and the use of the contested involuntary hospitalization as support for future hospitalizations.

A case may become moot if "(1) it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citations omitted). The burden of demonstrating that a case is moot falls heavily upon the party asserting it. *Id.* We hold that the Hospital has not met its burden.

This jurisdiction has recognized that emergency confinement on the grounds of mental illness and dangerousness to one's

---

the Hospital. The application also did not indicate the circumstances under which appellant was taken into custody. D.C.Code § 21–521. Indeed, the application form (Form FD (12)–826/Feb. 81) does not provide space for the physician to indicate the date of his examination of the patient, or to state his reasons and conclusions; the only space provided for a description of the facts and reasons relates to the circumstances under which the patient is taken into custody. Had either been provided in this case, the admitting officials at the Hospital, as well as the trial court, might more readily have noted a problem with the validity of the applica-

tion and appropriate action could have been taken at least as early as April 21, 1983.

2. *Morris v. Block*, No. 83–450 (D.C. May 6, 1983).

3. Under D.C.Code § 21–528 the hospital may continue to hold a person after it has filed a petition for judicial hospitalization under D.C. Code § 21–541. This was done on May 2, 1983, and attached to the petition was the certificate of Dr. Hiramatsu, dated April 28, 1983, diagnosing appellant as schizophrenic, paranoid chronic with acute exacerbation.

self and others "may have continuing collateral consequences which should be dispelled if the confinement was, in fact, unlawful." *In re Curry*, 152 U.S.App.D.C. 220, 223, 470 F.2d 368, 371 (1972); *In re Ballay*, 157 U.S.App.D.C. 59, 64, 482 F.2d 648, 653 (1973).[4] *See Bension v. Meredith*, 455 F.Supp. 662, 666 (D.D.C.1978); *cf.* D.C. Code § 21–564(a);[5] *Frendak v. United States*, 408 A.2d 364, 377 (D.C.1979) (collateral consequences of acquittal on grounds of insanity). The Hospital has already relied on the involuntary hospitalization which is at issue in this appeal in seeking appellant's subsequent involuntary commitment on January 17, 1984. *In re Morris*, M.H. No. 86–84 (Superior Court January 18, 1984) (Kessler, J.).

The government has also failed to demonstrate that this case is not one "capable of repetition yet evading review." *United States v. Edwards*, 430 A.2d 1321, 1324 n. 2 (D.C.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982); *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Such a situation arises when:

(1) the challenged action [is] in its duration too short to be fully litigated prior to

its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subject to the same action again.

*Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349 (1975). Many cases have found challenges to commitment procedures by discharged mental patients to fall within this doctrine. *In re Ballay, supra,* 157 U.S.App.D.C. at 62, 482 F.2d at 651; *In re Curry, supra,* 152 U.S.App.D.C. at 223, 470 F.2d at 371; *Bension v. Meredith, supra,* 455 F.Supp. at 666. *Accord Doe v. Gallinot*, 657 F.2d 1017, 1021 n. 6 (9th Cir.1981); *Coll v. Hyland*, 411 F.Supp. 905, 907 (D.N.J.1976); *Hashimi v. Kalil*, 388 Mass. 607, 608, 446 N.E.2d 1387, 1389 (1983). Because appellant has a history of mental illness and his family still has control over him, as is clear from the fact that notification of appellant's admission on April 21 was given to his relative, we find this situation is "capable of repetition yet evading review." Accordingly, we hold that appellant's case is not moot.

### III.

■ The trial court declined to review the illegality of appellant's initial detention, relying on *Williams v. Meredith, supra,*

4. *In re Ballay, supra,* 157 U.S.App.D.C. at 62–63, 482 F.2d at 651–52, following the rule in *Sibron v. New York,* 392 U.S. 40, 57, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968) for mootness in criminal cases, propounded a full range of potential adverse collateral consequences for persons adjudged mentally ill: restrictions on voting rights, jury service, driving privileges, disposition of property, execution of contracts, and the possibility of subsequent use of a mental illness adjudication in civil commitment proceedings. Because Ballay had three prior civil commitments and testimony indicated the likelihood of future mental problems, the court held the appeal was the subject of a "continuing controversy and not moot;" *cf. In re Curry, supra,* 152 U.S.App.D.C. at 223, 470 F.2d at 371 (prior emergency confinement on basis that person is mentally ill and dangerous to self or others has continuing collateral consequences even if at time of appellate challenge to emergency confinement, person is lawfully hospitalized); *accord Sibron v. New York, supra,* 392 U.S. at 56–57, 88 S.Ct. at 1899–1900 (neither number nor nature of prior commitments can properly

be used to suggest no collateral consequences from most recent determination).

5. D.C.Code § 21–564(a) provides:

(a) A patient hospitalized pursuant to this chapter may not by reason of the hospitalization, be denied the right to dispose of property, execute instruments, make purchases, enter into contractual relationships, vote, and hold a driver's license, unless the patient has been adjudicated incompetent by a court of competent jurisdiction and has not been restored to a legal capacity. If the chief of service of the public or private hospital in which the patient is hospitalized is of the opinion that the patient is unable to exercise any of the rights referred to in this section, the chief of service shall immediately notify the patient and the patient's attorney, legal guardian, spouse, parents, or other nearest known adult relative, the Superior Court of the District of Columbia, the Commission on Mental Health, and the Commissioner [Mayor] of the District of Columbia of that fact.

407 A.2d at 574, for the proposition that determination of probable cause to further detain appellant in an independent judicial proceeding would remedy the legal imperfection of the initial detention. *Accord In re Williams,* 471 A.2d 263, 267 (D.C.1984). In *Williams v. Meredith, supra,* petitioners sought habeas corpus relief for their involuntary hospitalization, alleging that the physicians who signed the applications leading to their emergency commitment were not empowered, under the Act, to initiate emergency commitment procedures. This court agreed but upheld the trial court's refusal to issue the writs on the ground that the legal imperfection was remedied when the trial court reviewed the emergency hospitalizations to determine (upon an *ex parte* proceeding under § 21–523 and after a contested hearing under § 21–525) whether there was probable cause to justify continued detention. We find no reasonable basis upon which to distinguish appellant's situation. Appellant does not claim that after his initial detention he was held without independent judicial review beyond the time limitations set forth by statute. The trial court's *ex parte* determination that there was probable cause for the Hospital to detain appellant for seven days after his initial detention was based not only on Dr. Bukatman's invalid affidavit but also on Dr. Pope's admission notes and certificate, which were substantively identical and provided adequate grounds for detaining appellant for seven days. *In re Barnard,* 147 U.S.App. D.C. 302, 305, 455 F.2d 1370, 1373 (1971).

Finally, the lack of a contested hearing, under § 21–525, does not require a different result from *Williams v. Meredith.* Such a probable cause hearing is granted upon the request of the hospitalized person and protects his interests. Appellant's counsel refused to participate in such a hearing for tactical reasons, hoping thereby to avoid application of *Williams v. Meredith.* Appellant has not requested such a hearing at any time since April 27, and withdrew his only request on the day he filed notice of this appeal. Accordingly, appellant cannot now be heard to claim the defect in the initial commitment has not been cured because of the lack of the hearing which he waived. *Williams v. Meredith, supra,* 407 A.2d at 574. The trial court correctly declined to reconsider its *ex parte* determination of probable cause to detain appellant for seven days.

## IV.

Appellant also requests this court to order the Hospital to amend its records to indicate that his initial detention, and all flowing therefrom, was unlawful. The trial court found that the use of Dr. Bukatman's application was improper and the Hospital concedes that that application was not in compliance with § 21–582(b) of the Act. But the Hospital asserts that because appellant has failed to exhaust his administrative remedies under the Privacy Act, 5 U.S.C. § 552a,[6] we should decline his request.

The Privacy Act cannot afford appellant the full relief which he seeks, namely, to have both his hospital and court records reflect an invalid involuntary judicial commitment. Under the Act, the Hospital can only amend its own records in accordance with its view of a court order; it does not have authority to declare a judicial action invalid or to amend court records. *Cf. R.R. v. Department of the Army,* 482 F.Supp. 770, 773 (D.D.C.1980); *Chastain v. Kelley,* 167 U.S.App.D.C. 11, 510 F.2d 1232 (1975). All parties to this appeal agree that appellant's initial commitment violated his rights under a statute designed to protect his liberty, and resulted in his loss of liberty. We perceive no reason to require appellant to expend additional time and effort to pursue a partial remedy when this court can afford the requested equitable relief and all affected parties are properly before

---

6. The Hospital's procedures for amending its records pursuant to the Privacy Act are set forth in 45 C.F.R. § 5b(7) and (8).

the court. *Cf. District of Columbia v. Hudson*, 404 A.2d 175, 180 (D.C.1979) (en banc) (expungement of arrest records is equitable relief within power of court); *Chastain v. Kelley, supra,* 167 U.S.App. D.C. at 14, 510 F.2d at 1235 (federal courts are empowered to order the expungement of government records where necessary to vindicate rights secured by the Constitution or by statute); *R.R. v. Department of the Army, supra,* 482 F.Supp. at 774 (same). *See* D.C.Code § 17–306 (1981) (this court may direct entry of an appropriate order as is just in the circumstances). *See also In re Curry, supra,* 152 U.S.App.D.C. at 224, 470 F.2d at 372 (prior to enactment of the Privacy Act, trial court directed to enter an order requiring the Hospital to amend its records to indicate that Curry was invalidly detained as an involuntary patient). Accordingly, we hold the initial detention of appellant on April 21, 1983, pursuant to § 21–521 was null and void, and remand this case to the trial court for entry of an order directing the Hospital to correct its records to so indicate.[7] In all other respects, the judgment below is affirmed.

*Affirmed in part, reversed in part, and remanded.*

---

**7.** We note that had the probable cause hearing under § 21–525 been held, as the trial court urged, *regardless of* whether probable cause had been found, the trial court could have addressed appellant's contention regarding the validity of the § 21–521 proceeding, avoiding a separate proceeding to accomplish the result in this appeal.