**In re Michael FEENSTER, Appellant.**

**No. 86–985.**

District of Columbia Court of Appeals.

Argued March 7, 1989.
Decided July 20, 1989.

Marion E. Baurley, Washington, D.C., appointed by the court, with whom Gregory L. Lensbower, appointed by the court, was on the brief, for appellant.

Barbara J. Matthews, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, Charles L. Reischel, and Ann O'Regan Keary, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN, Associate Judge, and GALLAGHER, Senior Judge.

---

FERREN, Associate Judge:

Appellant asks this court to vacate a trial court order revoking his outpatient commitment at St. Elizabeths Hospital and committing him indefinitely as an inpatient. He argues that the hospitalization procedures leading up to that revocation violated the District of Columbia Hospitalization of the Mentally Ill Act (the Act), D.C.Code §§ 21–501 to 21–592 (1981 & 1988 Supp.). More specifically, appellant contends that his treatment as an involuntarily hospitalized inpatient violated the Act because he was held for ten days without a judicial hearing to determine whether probable cause existed for that hospitalization.[1] We agree and conclude that the only proper remedy is vacation of the revocation order.

## I.

Appellant was civilly committed to St. Elizabeths Hospital as an outpatient pursuant to a court order of December 3, 1981.[2] According to the sworn affidavit of Dr. Christine Kehne, a staff psychiatrist at Saint Elizabeths, appellant was brought to the hospital on March 29, 1986, following a voluntary request for admission. Four days later, on April 2, 1986, the hospital filed a petition in the Superior Court to revoke appellant's outpatient commitment order. On April 8, 1986, Saint Elizabeths filed a "Notice of Rehospitalization," with Dr. Kehne's affidavit attached.[3] The notice explained that the "delay" in the hospital's notification of appellant's hospitalization was caused by an administrative error.[4] The trial court, on April 8, issued an *ex parte* order (1) finding probable cause that petitioner had failed to follow his treatment regimen and/or suffered a deterioration in his mental condition and (2) ordering his continued hospitalization at Saint Elizabeths. The judge also issued an order appointing counsel for appellant. The court notified the parties and their counsel that a revocation hearing would be held on April 23, 1986. On April 23, after finding that involuntary inpatient hospitalization was the least restrictive alternative for appellant's treatment, the trial court revoked appellant's outpatient commitment order and ordered his indefinite hospitalization.

## II.

■ Appellant argues that the revocation order should be vacated and that he should be released because he was involuntarily detained for ten days before receiving any judicial review of his hospitalization. In *In re Richardson*, 481 A.2d 473, 480 (D.C.1984), this court held that, within twenty-four hours of an outpatient's involuntary hospitalization, the hospital

---

1. Appellant also asserts that because he voluntarily sought inpatient treatment while civilly committed as an outpatient, St. Elizabeths lacked statutory authority to try to convert his outpatient commitment to an involuntary, inpatient commitment so long as he voluntarily remained at the hospital. Because the trial court did not address the voluntariness of appellant's hospitalization, we would ordinarily remand the record for factual findings. However, because resolution of this matter is not necessary to determine the legality of appellant's outpatient revocation, we do not directly reach this issue, rendering a remand unnecessary.

2. The outpatient commitment order set forth brief procedural requirements for revoking appellant's outpatient status if he failed to follow his prescribed treatment plan or if his condition deteriorated. Under the terms of the order, St. Elizabeths could hospitalize appellant for a temporary period, not to exceed five days, with notice to counsel. At the end of the five days, the hospital had to release him unless, within that period, it had recommended to the court in writing that the outpatient commitment order be revoked. In *In re Richardson*, 481 A.2d 473 (D.C.1984), which this court decided before appellant was involuntarily hospitalized, we considered the adequacy of similar procedures under the Act and decided that the statute demanded more stringent safeguards.

3. In addition to noting appellant's voluntary request for hospitalization, the affidavit described appellant's "deteriorated" mental state during his first ten days of hospitalization as "acutely psychotic" and "actively hallucinating and delusional." According to the affidavit, appellant had stopped taking his medication and had begun smoking PCP, thereby failing to abide by the treatment regimen set out in his outpatient commitment order.

4. Under this court's interpretation of the Act, St. Elizabeths was required to file the "Notice" within twenty-four hours of appellant's hospitalization. *See Richardson*, 481 A.2d at 480.

must provide the court with an affidavit reciting recent actions of the patient and reasons for the hospitalization in sufficient detail to make possible a prompt *ex parte* judicial determination that the hospital's actions are supported by probable cause.[5] Under the Act, the courts have a duty to become actively involved in a committed outpatient's rehabilitative process. *Id.* Therefore, in accordance with basic due process, *Richardson* provided that judicial review of involuntary hospitalizations of outpatients should be swiftly afforded in order to reduce the risk of arbitrary or erroneous actions by the hospital. *See id.* at 482. Here, appellant entered the hospital on March 29, 1986, and yet it was not until April 8—not twenty-four hours but ten days later—that St. Elizabeths submitted to the court an affidavit concerning the circumstances of appellant's hospitalization for its "prompt" *ex parte* review. We believe that this lengthy detention without judicial review violated appellant's rights under the Act.

■ Appellee argues, however, that any defect in the late filing of the "Notice of Rehospitalization" was cured both by the court's *ex parte* probable cause determination of April 8, 1986, and by the adversarial revocation hearing held on April 23, 1986, citing this court's decision in *In re Morris*, 482 A.2d 369 (D.C.1984). We disagree. In *Morris*, we held that, although a legally flawed application for emergency hospitalization rendered a patient's initial hospitalization unlawful, it did not invalidate a subsequent seven-day detention imposed after an *ex parte* judicial hearing finding probable cause for the detention. *Id.* at

372–73. We explicitly noted, however, that the patient "d[id] not claim that . . . he was held without independent judicial review beyond the time limitations set forth by statute." *Id.* at 373. In contrast, in *In re DeLoatch*, 532 A.2d 1343 (D.C.1987), we confronted a claim of procedural error which did result in a patient's detention beyond the statutory time limits set for judicial review. The patient in *DeLoatch* had sought a hearing pursuant to D.C.Code § 21–525 (1981) to challenge the trial court's *ex parte* confirmation of the hospital's decision to detain her for up to seven days. Because the hearing was not provided within twenty-four hours of the patient's request, as required by statute, we vacated the order involuntarily hospitalizing her. Distinguishing *Morris* and the case law upon which it relied, we held that a finding of probable cause cannot cure a failure to provide judicial review within the time limits set by statute. *DeLoatch*, 532 A.2d at 1345. Similarly, in the present case neither the court's *ex parte* probable cause determination of April 8, 1986, nor the adversarial revocation hearing held on April 23, 1986, can cure appellant's illegal detention for ten days without any judicial review. As we stated in *DeLoatch*, the Act "evolved out of a 'profound congressional concern for the liberties of the mentally ill.'" *Id.* at 1345 (quoting *Covington v. Harris*, 136 U.S.App.D.C. 35, 41, 419 F.2d 617, 623 (1969)). Thus, to uphold the revocation order under these circumstances "would do serious damage to the statutory scheme." *Id.*

■ We conclude that the revocation of appellant's outpatient commitment order

---

5. We also concluded in *Richardson* that the patient's counsel should be provided with a copy of the affidavit within twenty-four hours of the patient's involuntary hospitalization and that both the patient and his counsel should be informed in writing that the hospital must either release the patient after the fifth day of hospitalization or move for a prompt adversary revocation hearing. *Id.* at 481. In the present case, counsel was not appointed, nor was the "Notice of Rehospitalization" filed, until the tenth day of appellant's hospitalization. Thus, counsel obviously was not provided with St. Elizabeths' affidavit within twenty-four hours. Nor is there any evidence in the record that appellant or his

counsel received notice of appellant's procedural rights within five days of his hospitalization, as required by *Richardson*. The petition to revoke appellant's outpatient status was filed on April 2, 1986, but it contains no notation that a copy was sent to appellant. Moreover, while the standard notation at the bottom of the petition (cc:) indicated that a carbon copy of the April 2 petition was sent to "Patient's Counsel," counsel was not appointed until April 8, 1986, suggesting that counsel could not have received the petition within the statutorily-set five-day time period. (After the appointment, notations for copies to counsel bore counsel's actual name.)

was rendered invalid by the illegal detention that preceded it. Appellant's proper status is that of a civilly committed outpatient undergoing voluntary treatment at the hospital. If appellant were to decide to leave the hospital and the hospital were to conclude that appellant's status as an outpatient would threaten his health or well-being or the safety of the community, the hospital, of course, is not without recourse to detain him. Should appellant apply for release, the hospital may hold him for forty-eight hours, if necessary, to decide whether it wishes to initiate outpatient revocation procedures. D.C.Code § 21–512 (1981). If the hospital decides to detain appellant, it must notify him and his counsel (if he is represented) of its decision immediately. Then, following *Richardson*, 481 A.2d at 480–81, within twenty-four hours of the detention decision—*i.e.*, no more than three days after appellant's application for release—the hospital must file the required notice of hospitalization with the court and comply with all of the other procedural requirements set forth in *Richardson* and in this opinion.

This case is remanded to the Superior Court with instructions to vacate the revocation order.

*Reversed and remanded with instructions.*