In the Matter of Michelle
REED, Appellant.

No. 89–263.

District of Columbia Court of Appeals.

Argued Jan. 9, 1990.
Decided March 16, 1990.

Elizabeth Taylor, Public Defender Service, with whom James Klein, Public Defender Service was on the brief, for appellant.

Richard F. Gondelman, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel at the time the brief was

filed, Charles L. Reischel, Deputy Corp. Counsel, and Ann O'Regan Keary, Deputy Corp. Counsel, were on the brief, for appellee.

Before ROGERS, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

In the case before us, the government filed a petition for judicial hospitalization beyond the time period prescribed by the District of Columbia Hospitalization of the Mentally Ill Act, D.C.Code §§ 21–501 to –592 (1989) (the "Act" or the "Ervin Act"). The issue before us is whether the government may rely on the late-filed petition to authorize continued involuntary confinement of an assertedly mentally ill patient during the pendency of the petition proceedings. We hold that it may not.

I

Appellant Michelle Reed was involuntarily taken into custody and admitted to St. Elizabeths Hospital ("the Hospital")[1] on February 22, 1989 "for purposes of emergency observation and diagnosis," as permitted by D.C.Code § 21–521 (1989). The next day, the Hospital filed, pursuant to D.C.Code § 21–523 (1989), a petition with the District of Columbia Superior Court requesting permission to continue appellant's hospitalization for a period of up to seven additional days. The Superior Court granted the petition, permitting the Hospital to continue appellant's hospitalization until 12:20 p.m. on March 2, 1989. Although her period of confinement was due to expire at 12:20 p.m. on March 2, appellant for unexplained reasons requested, pursuant to D.C.Code § 21–525, a hearing before the Superior Court on her hospitalization sometime on the day of March 2 and remained in the Hospital beyond 12:20 p.m.

---

1. St. Elizabeths Hospital is a public hospital now administered by the District of Columbia. D.C.Code § 32–623(a)(1) (1988). The Ervin Act permits the "administrator" of a hospital to admit a patient for "emergency observation and

on that day.[2] At 2:00 p.m. on March 3, the Hospital filed a petition for judicial hospitalization, pursuant to D.C.Code § 21–541, and at 2:40 p.m. on that day appellant received the hearing she had requested. At the hearing, the Superior Court found "probable cause to believe that [appellant] is mentally ill and, because of that illness, is likely to injure herself or others unless immediately hospitalized" and ordered that appellant be "remanded to Saint Elizabeth's Hospital for emergency observation and diagnosis in accordance with the Court's prior order pursuant to D.C.Code § 21–524(a)(1)." On March 6, appellant filed a motion with the Superior Court seeking dismissal of the judicial hospitalization petition and her release from the Hospital.[3] She argued then and reasserts on appeal that the failure of the government to file its judicial hospitalization petition within the seven-day period of her initial confinement prevented the government from taking advantage of a statutory provision permitting continued detention of mentally ill persons pending judicial proceedings. She maintains, consequently, that the government is without authority to continue her detention[4] and that she must be released. The Superior Court denied her motion on March 10.

## II

The District of Columbia Hospitalization of the Mentally Ill Act provides "an explicit and expedited timetable" for

involuntary hospitalization procedures, *In re Lomax*, 386 A.2d 1185, 1188 (D.C.1978) (en banc), "evinc[ing] the intention of Congress to permit emergency confinement for *only short and precisely circumscribed durations*." *In re DeLoatch*, 532 A.2d 1343, 1345 (D.C.1987) (per curiam). While the Act permits "the often necessary emergency hospitalization of the mentally ill or those believed to be mentally ill," *id.*, it also reflects a " 'profound congressional concern for the liberties of the mentally ill.' " *Id.* (quoting *Covington v. Harris*, 136 U.S.App.D.C. 35, 41, 419 F.2d 617, 623 (1969)). We therefore construe the Act narrowly where its application results in the curtailment of an individual's liberty. *Lomax, supra*, 386 A.2d at 1187–88.

Resolution of this case rests on the interpretation of D.C.Code § 21–528,[5] which states:

> Notwithstanding any other provision of this subchapter, the administrator of a hospital in which a person is hospitalized under this subchapter may, if judicial proceedings for his hospitalization have been commenced under subchapter IV of this chapter, detain the person in the hospital during the course of the judicial proceedings.

This section permits a hospital to continue to detain a patient pending the outcome of proceedings for judicial hospitalization if the hospital has commenced the proceedings while the patient is "hospitalized under this subchapter," that is, in accordance

diagnosis" on application of a qualified person. D.C.Code § 21–522 (1989).

2. The record does not make clear why appellant remained in the Hospital beyond the time scheduled for her release. The Hospital may have prevented her from leaving; she may not have known she was free to leave; or she may voluntarily have decided to remain in the Hospital. *See infra* note 4.

3. Although appellant is not hospitalized at present, she has remained under the Hospital's authority continuously since March of 1989. The Hospital continues to assert its power to detain her pending disposition of its petition for judicial hospitalization. Appellant's liberty is restricted. She is required to report for outpatient treatment and to take prescribed medication. Her failure to comply with these requirements could result in her return to the

Hospital. There has been no activity in this case since March of 1989 before the Superior Court or the Commission on Mental Health, which holds the initial proceedings for judicial hospitalization. D.C.Code § 21–542. We note that even had petitioner been unconditionally released, this appeal would not be moot. *In re Morris*, 482 A.2d 369, 371–72 (D.C.1984).

4. Appellant stated in her Memorandum of Points and Authorities in support of her Motion to Dismiss that she "has consistently made known to anyone who would listen that she wishes to leave the Hospital at once."

5. Hereinafter, "section 528." Occasionally, we refer similarly to other sections of the Ervin Act.

with its provisions. "[T]his subchapter" refers to subchapter III, entitled "Emergency Hospitalization." The subchapter contains the provisions for initial involuntary custody and transport to a hospital, D.C.Code § 21–521, and detention in the hospital for forty-eight hours or, on the granting of the hospital's petition, an additional period "not to exceed" seven days, *id.* § 21–523.

The Hospital concedes that it failed to file its judicial hospitalization petition within the seven-day period prescribed by section 523. Because appellant was not therefore "hospitalized under this subchapter," the Hospital may not strictly rely on section 528 as a source of authority for its continuing control over appellant.[6] The Hospital argues, however, that several of our cases should be read to permit a continuing exercise of control because appellant was not denied the opportunity to receive timely judicial review of her confinement and such review serves to cure "minimal procedural deficiencies," *DeLoatch, supra,* 532 A.2d at 1345, such as the day-long delay that occurred in this case.

In three cases we have permitted "an independent judicial determination of the need for further involuntary hospitalization [to] remed[y] the legal imperfection of [an] original detention." *Williams v. Meredith,* 407 A.2d 569, 574 (D.C.1979). *See In re Morris, supra* note 3, 482 A.2d at 373; *In re Rosell,* 547 A.2d 180, 182 (D.C.1988).[7] In each of these cases, however, the defect in the initial detention related to the fact that the doctors submitting detention applications failed to meet the requirements of the Act. In *Williams* and *Rosell,* the patients claimed that the doctors who submitted applications for the patients' initial emergency hospitalizations were not the "physician[s] ... of the person in question," as required by D.C.Code § 21–521. *Williams, supra,* 407 A.2d at 573; *Rosell, supra,* 547 A.2d at 182. In *Morris,* the claimed defect was that the doctor who submitted the patient's application had not based his application on a timely "personal observation and examination" of the patient, as required by D.C.Code § 21–582(b). *Morris, supra,* 482 A.2d at 370–71. These cases did not involve a failure by the hospital to meet statutorily prescribed procedural time deadlines.

In our two cases that have dealt with failure to meet such a statutorily prescribed time deadline, *In re Feenster,* 561 A.2d 997 (D.C.1989); *DeLoatch, supra,* we found that subsequent judicial review did not cure the noncompliance. In *DeLoatch,* a patient was hospitalized under the emergency hospitalization provisions of sections 521 and 523. During her hospitalization, she requested a hearing pursuant to D.C. Code § 21–525 (1989), which provides that "[t]he court shall grant a hearing to a person whose continued hospitalization is ordered under section 21–524, if he requests the hearing. The hearing shall be held within 24 hours after receipt of the request." The court failed to grant the hearing within twenty-four hours of the patient's request. *DeLoatch, supra,* 532 A.2d at 1344. We vacated the seven-day hospitalization order, finding that "[t]he language of § 21–525 is plain and clear; upon request, a hearing *shall* be held within 24 hours," *id.* (emphasis in original), and that "[i]nterpretation of § 21–525 to allow rather than require a hearing within 24 hours would do serious damage to the stat-

6. Nor do the provisions of subchapter IV on judicial hospitalization provide an independent basis for exercising control over an individual. When an individual is not in detention at the time the hospital files its section 541 petition, the hospital may proceed against the individual but the individual remains at liberty during the course of the proceedings. Were the hospital to institute an emergency proceeding under section 521 following the filing of its judicial hospitalization petition, section 528 would reasonably apply thereafter. Moreover, if a petition for judicial hospitalization is not filed within the requisite seven-day period and a patient is thereupon released, we see no obstacle to the immediate institution of a second section 521 proceeding. The patient retains at all times the right under section 525 to obtain prompt judicial review of the confinement.

7. The panel in *Rosell* deemed itself bound by the prior decisions in *Williams* and *Morris. See Rosell, supra,* 547 A.2d at 182, 183 (Rogers, J., concurring) (expressing concern over vitiation of statutory requirement).

utory scheme." *Id.* at 1345. Moreover, we refused to apply the *Williams–Morris* approach to conclude that the court's eventual holding of a hearing cured the noncompliance, stating:

> Unlike the instant case, however, neither *Morris* nor *Williams* involved the failure to meet a statutory deadline. Both involved minimal procedural deficiencies which did not significantly infringe upon the due process interests of the patients. Indeed, the court in *Morris* recognized this distinction, pointing out that "[a]ppellant does not claim that after his initial detention he was held without independent judicial review beyond the time limitations set forth by statute."

*DeLoatch, supra,* 532 A.2d at 1345 (citation omitted).

In *Feenster,* the hospital sought to revoke the appellant's outpatient status and confined him in the hospital for ten days before it filed with the court an affidavit, which was required by *In re Richardson,* 481 A.2d 473, 480 (D.C.1984), to have been filed within twenty-four hours. *Feenster, supra,* 561 A.2d at 999. Two subsequent hearings took place in which the court found probable cause to support the hospitalization and the court revoked the appellant's outpatient status. *Id.* at 998. We

reversed and vacated the revocation order. Distinguishing *Morris* and relying on *De-Loatch,* we concluded that the subsequent hearings did not "cure appellant's illegal detention for ten days without any judicial review." *Id.* at 999.

Appellant's case is analogous to *De-Loatch* and *Feenster* in that the Hospital failed to meet a "statutory deadline." *De-Loatch, supra,* 532 A.2d at 1345. The Act delineates a strict timetable for the implementation of involuntary hospitalization. We therefore conclude that subsequent judicial review cannot cure a failure to meet a statutory deadline such as that necessarily contained in section 528 of the Act. The Hospital's exercise of control over appellant after 12:20 p.m. on March 2, 1989 was invalid and appellant was entitled to immediate release from any restrictions on her freedom.[8]

*Reversed.*

---

**8.** Appellant appeals the March 13, 1989 denial of her Motion to Dismiss, which contained a request for her release from any restrictions on her liberty. We reverse the trial court's denial of her Motion only insofar as she sought release. Appellant is not entitled to dismissal of the Hospital's section 541 petition for judicial hospitalization, however. There is no requirement that a 541 petition be preceded by emergency hospitalization or detention nor does appellant contend that the 541 petition here failed to comply with any statutory requirements.