**In re Eric BARLOW, Appellee.**

**Nos. 92–FM–301, 92–FM–348.**

District of Columbia Court of Appeals.

Argued Oct. 6, 1993.

Decided Dec. 27, 1993.

Sandra K. Levick, Public Defender Service, with whom James Klein, Public Defender Service, Washington, DC, was on the brief, for appellee.

Sheila Kaplan, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, Charles L. Reischel and Janet L. Maher, Deputy Corp. Counsels, Washington, DC, were on the brief, for the District of Columbia.

Before TERRY and WAGNER, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

This case is before us as a consolidated appeal of two separate decisions by two Superior Court judges which prevented the ongoing emergency hospitalization of Eric Barlow under the Hospitalization of the Mentally Ill Act, D.C.Code §§ 21–501 to –592 (1973) (the Ervin Act). In both instances the trial court proceedings concluded when the presiding judge found that the procedural requirements of the Ervin Act had been violated. Thus, no evidence or argument was heard regarding the merits of appellant-hospital's contention that Mr. Barlow posed a threat to the safety of himself or others and should remain hospitalized. The appeals will be considered in chronological order.

## I.

Eric Barlow was detained by agents of the United States Secret Service on February 11, 1992. On that date he appeared at the White House carrying live ammunition and seeking a meeting with the President. He claimed to be an undercover operative with the United States government. Pursuant to D.C.Code § 21–521, which allows the detention of persons believed to be mentally ill and imminently in danger of injuring themselves or others, he was involuntarily transported to St. Elizabeths Hospital.[1] He was admitted to the hospital on the basis of an examination by a staff psychiatrist in compliance with § 21–522. Under this section a person may be detained for only forty-eight hours unless the hospital files a petition for further involuntary detention. The hospital timely filed such a petition pursuant to § 21–523, which allows the court to order continued involuntary hospitalization for a period not to exceed seven days to facilitate further observation and diagnosis. The hospital's petition was heard and granted on February 12, 1992.

Two days later, on Friday, February 14, 1992, Mr. Barlow requested a hearing pursuant to § 21–525, which states: "The court shall grant a hearing to a person whose continued hospitalization is ordered under section 21–524, if he requests the hearing. The hearing shall be held *within 24 hours* after receipt of the request." (Emphasis added.) Under § 21–526, which provides for the extension of this maximum time period where weekends and/or holidays intervene,

---

1. The application seeking Mr. Barlow's emergency hospitalization also referred to a previous incident, recounted to the Secret Service by Mr. Barlow's sister, wherein Mr. Barlow had been on top of a vehicle with guns and ammunition declaring himself to be "Rambo." Police assistance was required to disarm Mr. Barlow at that time.

Mr. Barlow's hearing was required to be held by noon on Tuesday, February 18, the day following the President's Day holiday.

Mr. Barlow's hearing was to begin at 10:00 a.m. on Tuesday, but due to the scheduling of another patient's probable cause hearing on that same day, Judge Dorsey did not call Barlow's case until several minutes before noon. Mr. Barlow's counsel immediately made a motion to dismiss, alleging that the hearing had not been timely provided, citing *In re DeLoatch*, 532 A.2d 1343 (D.C.1987).[2] Judge Dorsey denied the motion, noting that the calling of the case constituted the beginning of the hearing. Then, with the dual purposes of continuing the unrelated probable cause hearing which he had not yet concluded and affording Mr. Barlow the opportunity to move forward with his own hearing immediately, Judge Dorsey certified the case to Judge Haywood at 11:57 a.m.

The parties relocated to Judge Haywood's courtroom and were called before her a few minutes after noon. Mr. Barlow's counsel again moved to dismiss the case on the same grounds presented to Judge Dorsey. Judge Haywood, noting the time, granted the motion.[3] She found that the hospital had failed to establish probable cause within the twenty-four hour maximum time period and ordered Mr. Barlow's immediate release. The hospital appeals Judge Haywood's order.

## RIGHT OF APPEAL

■ Mr. Barlow cites this court's en banc decision in *In re Lomax*, 386 A.2d 1185 (D.C.1978), to support his contention that the District may not appeal Judge Haywood's ruling. The *Lomax* court held that "the petitioner [hospital] in an involuntary commitment proceeding brought under the [Ervin] Act has no right of appeal after a verdict is rendered in favor of the patient." *Id.* at 1186.[4]

The appeal in *Lomax* arose in a context clearly distinguishable from that presented here. In *Lomax* the hospital's civil commitment petition was considered by a jury that found the appellee "not committable." *Id.* at 1187. The jury's verdict followed a *full adjudication on the merits*, which we find central to the *Lomax* court's ruling. Highlighting the purposes underlying the passage of the Ervin Act, the *Lomax* court wrote, "[o]ne of the concerns was that no one be hospitalized involuntarily for a prolonged period *unless a judge or jury* found the patient to be both mentally ill and likely to injure himself or others." *Id.* at 1188. (Emphasis added.) The *Lomax* court's conclusion that a petitioner (hospital) has no right to appeal a judge or jury's determination that the subject of a petition is not committable is, thus, consistent with the purpose of the Act.

As regards Mr. Barlow, however, no evidence was presented before Judge Haywood concerning the merits of the hospital's claim that Barlow was mentally ill and posed a danger to himself or others. The case was dismissed prior to the presentation of evidence, solely on the basis of Judge Haywood's interpretation of the time requirement in § 21–525. Were the hospital to be denied the right of appeal in this instance,

---

2. In *DeLoatch, supra,* where a patient requested a probable cause hearing pursuant to § 21–525 and that hearing was not scheduled to be held until *twenty-five hours* after the request, and, due to calendar congestion was not in fact held until forty-five hours after the request, this court held that the statute had been violated and the patient must be released.

3. Citing the "law of the case" doctrine, appellant argues that Judge Dorsey's denial of Barlow's motion should not have been reconsidered by Judge Haywood. We are not persuaded by appellant's claim. Under the "law of the case" doctrine, a trial judge presiding over later phases of a proceeding is bound by an earlier final ruling by a judicial colleague, unless new facts have arisen in the interim. *United States v.*

*Davis,* 330 A.2d 751, 755 (D.C.1975). However, this court has stated:

> While it is highly desirable that a judge show respect for prior rulings made by another judge in the same case, and should not lightly depart from them, the ultimate responsibility rests on the judge to whom the case is assigned for trial on the merits. If the trial judge is strongly convinced ... that a preliminary or interlocutory ruling made by another judge was clearly erroneous, the trial judge is not bound to follow that ruling.

*Id.* (quoting *District of Columbia v. Faison,* 278 A.2d 688, 690 (D.C.1971)).

4. Separate procedures for emergency hospitalization and hospitalization under court order (civil commitment) are codified in the Ervin Act.

there would be no avenue for this court to review and resolve the inconsistent interpretations of § 21–525 presented in this case. *Lomax* notwithstanding, we find that the government retains a narrow channel of appeal in Ervin Act cases that implicate fundamental questions as to the procedure by which the statutorily prescribed hospitalization or commitment process is completed.[5]

**MOOTNESS**

■ Barlow asserts that even if the hospital is found to have a right of appeal regarding Judge Haywood's order, the hospital's claim is moot. The Supreme Court, however, has identified an exception to the mootness doctrine for issues that are "capable of repetition, yet evading review." *See Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The Court further defined this category of cases in *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), stating that, absent a class action, the following two-pronged test must be met: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 149, 96 S.Ct. at 349 (citing *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975)).

The second prong of the criteria stated in *Weinstein* may not be satisfied in the instant case. It has been represented that Mr. Barlow now resides in another state and, thus, may never return to the District to be "subjected to the same action again." *Id.* However, we need not hinge our decision on an analysis of this probability. This court has

"declined to adhere strictly to the requirements set forth in *Weinstein.*" *In re W.L.,* 603 A.2d 839, 841 (D.C.1991). *See also Atchison v. District of Columbia,* 585 A.2d 150, 153 (D.C.1991); *Lynch v. United States,* 557 A.2d 580, 582 (D.C.1989) (en banc); *United States v. Edwards,* 430 A.2d 1321, 1324 at n. 2 (D.C.1981) (en banc), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). (In *W.L., Lynch,* and *Edwards* the court heard appeals from petitioners who, due to subsequent changes in their legal status, were no longer subject to the statutes which they challenged.) Thus, the presence of the short duration prong alone, and appellant's attendant inability to litigate his or her claims before expiration of the challenged action, is sufficient to warrant disposition of the issue on the merits. *See, e.g., W.L., Lynch, Edwards.* As this court recently stated in *McClain v. United States,* 601 A.2d 80 (D.C.1992), those cases in which the court has chosen to rule in spite of valid mootness concerns "involved overarching issues important to the resolution of an entire class of future [cases]." *Id.* at 82.

The order that is the subject of this appeal touches on such overarching issues. Although it is unclear whether the appellee in this case will have any future contact with the District of Columbia, much less its emergency hospitalization procedures, it is obvious that appellant-hospital (and the trial courts themselves) will repeatedly encounter instances in which the § 21–525 maximum time period will expire prior to the conclusion of probable cause hearings. Without a definitive ruling from this court as to the requirements of § 21–525, this issue will arise in numerous future cases. Furthermore, because the hospital is required to release the

5. Appellee also cites that portion of the *Lomax* opinion which states that to allow an appeal by a petitioner would be illogical. The *Lomax* court held that an appeal would serve "no legitimate purpose" as "[t]he issue at any retrial would be the *current* mental condition of the patient." 386 A.2d at 1189. Thus, when a hospital is unsatisfied with the final verdict in a commitment proceeding, the proper response is to start the entire process again with a new petition. *Id.* The court's reasoning is eminently sound. Where the validity of the verdict itself is attacked by the petitioner, it is within petitioner's power to effectuate the desired remedy merely by instituting a

new petition. Whether pursued via appeal or the filing of a new petition, the hospital achieves the same goal, a new trial on the merits. This rationale is, however, inapposite in the context of the instant case. Without the right of appeal here, there can be no resolution of the question as to what constitutes the "holding" of a hearing sufficient to satisfy the requirements of § 21–525. And without such resolution, the hospital may be repeatedly thwarted by adverse, and conflicting, lower court interpretations of statutorily-prescribed procedural requirements. Unlike *Lomax,* the filing of a new petition here does not substitute for the right of appeal.

patient when a violation of § 21–525 is found, this issue will consistently and recurrently evade review.

## STATUTORY INTERPRETATION

■ Thus, we reach the question of what must transpire in order to satisfy the § 21–525 requirement that a probable cause hearing is "held within 24 hours after receipt of the [patient's] request."

No one suggests that the hearing must be *completed* within this time period. Such an interpretation would place an impossible burden on the courts and inspire tactical delays by patients' counsel. Neither, however, can merely formalistic actions by the court in the moments before the expiration of the twenty-four hour maximum time period be allowed to thwart the statute's purpose of protecting the civil and constitutional rights of affected persons. The Ervin Act "evolved out of a 'profound congressional concern for the liberties of the mentally ill' . . . a long-neglected group." *Lomax*, 386 A.2d at 1188 (citation omitted).

We hold that § 21–525 is satisfied when the patient who requested a hearing is presented before a judicial officer who, on behalf of the judicial system, sets the hearing process in motion prior to the expiration of the twenty-four hour deadline. In so holding, we in no way limit the scope of *DeLoatch, supra.* The process *must* begin prior to the expiration of the deadline and, to the extent that it is not completed prior to the expiration of the deadline, must *continue* to advance to conclusion without unreasonable delay. Postponement or deferral of final determinations due to judicial considerations, which unreasonably extend the length of the patient's hospitalization, would violate the statute.[6]

■ On the facts presented here, we find that for purposes of § 21–525, the hearing began prior to the expiration of the deadline when the case was called before Judge Dorsey. Even though Judge Dorsey himself was not prepared to preside over the hearing, he advanced the process prior to the expiration of the maximum time period by certifying the case to another judge who was ready to promptly *continue* the process.[7]

## II.

After Judge Haywood found that § 21–525 had been violated and ordered Mr. Barlow's

---

6. In *DeLoatch, supra,* the patient's case, which was to have been heard earlier in the day, was not called until late afternoon, at which time the judge, noting other judicial obligations, continued the case until the following morning. Although the court did not consider this fact in isolation in its determination that § 21–525 had been violated, we note that our interpretation of the statute would prohibit such an action. We do not conceive of circumstances in which *judicial* concerns, such as calendar congestion, would justify a delay that would require a patient to spend an additional night in the hospital. As stated in *DeLoatch,* "Congress provided for an extension of time when the 24–hour period ends on a non-business day. *See* D.C.Code § 21–526 (1981). Congress did not provide for an extension of time under any other circumstances, including court congestion. If it had wished to do so, it could have." 532 A.2d at 1345.

7. It should be noted that absent Barlow's motion before Judge Dorsey regarding the impending expiration of the twenty-four hour statutory deadline, the parties would, in all likelihood, have been before Judge Haywood prior to the expiration of the deadline. In this court's recent en banc decision in *In re Herman,* 619 A.2d 958 (D.C.1993), we noted that "mental health proceedings with their heavy involvement of the legal profession can slip into an adversarial posture, apparently pitting the abstract rights of the individual against those of the public. . . . [But t]he interests of a person who in fact is a danger to herself if not hospitalized would not necessarily seem well served by releasing her solely because of some procedural defect in the mechanism by which *she has come to be* hospitalized for emergency observation and diagnosis." *Id.* at 968. (Emphasis added.)

*Herman* is distinguished from the instant case in that in *Herman* the court was not called on to consider a failure to meet a statutorily-prescribed *time* deadline. This court has consistently found violations of time deadlines in the Ervin Act to require immediate release of the patient. *See DeLoatch, supra; In re Reed,* 571 A.2d 801 (D.C. 1990); *In re Feenster,* 561 A.2d 997 (D.C.1989). We have reached a contrary result in that line of cases in which we have considered non-time-oriented defects in the accomplishment of the original detention. We have found such defects remediable by a subsequent finding of probable cause. *See Williams v. Meredith,* 407 A.2d 569 (D.C.1979); *In re Rosell,* 547 A.2d 180 (D.C. 1988); *In re Morris,* 482 A.2d 369 (D.C.1984). Although *Herman* is within the *Williams* line of cases, we note the relevance of the court's concern as to whether adversarial posturing best serves the interests of clients in this type of proceeding.

immediate release, the parties left the courtroom. In the hallway outside, Barlow requested that the hospital transport him back to St. Elizabeths to retrieve his belongings. Barlow's treating physician responded that, as Barlow had been released from its custody, the hospital would not transport him. Insisting that Barlow needed a ride, Barlow's counsel ultimately prevailed upon the hospital to transport Barlow. Several hours after he was transported to St. Elizabeths by hospital personnel, as Barlow was preparing to exit the St. Elizabeths campus and was walking unescorted on the hospital grounds, he was again detained by a Secret Service agent on the belief that Barlow presented a danger to himself or others.

A new application for Barlow's emergency hospitalization was completed, and he was re-admitted to St. Elizabeths. The emergency hospitalization progressed to the same point it had in the first instance, with Barlow making a request for a probable cause hearing pursuant to § 21–525. When the hearing was timely commenced before Judge Dorsey, Barlow immediately moved to dismiss the petition as legally invalid. Barlow alleged that the authorities had not complied with

Judge Haywood's order releasing him from custody, as he was re-detained while still on the St. Elizabeths campus, and, that any new detention must be based on new facts, which he alleged were not present. Judge Dorsey granted the motion and ordered Mr. Barlow's release. The hospital appeals Judge Dorsey's order. Given our determination that Judge Haywood erred in ordering Barlow released at the commencement of the earlier probable cause hearing (*supra* Part I), we need not visit the merits of Judge Dorsey's actions at the second probable cause hearing.

We reverse the dismissal of the first petition by Judge Haywood, vacate the dismissal of the second petition by Judge Dorsey, and remand for further proceedings consistent with this opinion.[8]

*So ordered.*

---

8. It has been represented that Mr. Barlow is no longer in this jurisdiction. Therefore, we leave it to appellant's discretion as to whether further action will be pursued at this time.