**In re David WYLER.**

**District of Columbia, Appellant.**

**No. 11–FM–452.**

District of Columbia Court of Appeals.

Argued May 3, 2012.
Decided June 21, 2012.

Holly M. Johnson, Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellant.

Mikel–Meredith Weidman, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, and GLICKMAN and FISHER, Associate Judges.

FISHER, Associate Judge:

This appeal, which is technically moot, raises a complex and important procedural issue relating to the hospitalization of the mentally ill. When the government proffered a social worker from the Washington Hospital Center as an expert witness, the court precluded her testimony without conducting *voir dire*. The government proffered very little information, legal or factual, and the record does not permit us to determine whether she was qualified to testify as an expert on mental illness and dangerousness. Lacking a sufficient record on which to rule, we exercise our discretion to dismiss the government's appeal as moot. However, because we are persuaded that this is a recurring question that should be decided based on a full record, we identify the issue in a published opinion so that it may be fully examined in a future case.

## I. Factual Background

On February 17, 2011, David Wyler arrived at a homeless shelter barefoot and without a coat, despite the cold temperatures. He appeared dirty and unkempt, was talking to himself, and seemed "unable to give coherent and rational answers to questions." Mr. Wyler was eventually taken to Washington Hospital Center, where Dr. Chan Dang–Vu, a licensed psychiatrist, concluded that he had "symptoms of mental illness and, as a result thereof, is likely to injure [him]self and/or others unless immediately hospitalized." *See* D.C.Code § 21–523, –522 (2011 Supp). Under the authority of the Ervin Act,[1] the Superior Court granted the Department of Mental Health's petition to detain Mr. Wyler for further observation and diagnosis. *See* D.C.Code § 21–524 (2011 Supp.). On March 1, 2011, the day before the Superior Court's order was set to expire, the Department of Mental Health filed a petition for judicial commitment. *See* D.C.Code §§ 21–526(c), –541 (2011 Supp.). Mr. Wyler challenged his detention by requesting a probable cause hearing, which was held the next day. *See* D.C.Code § 21–525 (2001).

As the hearing began, the government informed the trial court that Dr. Dang–Vu could not be present. As an alternative, the District of Columbia proposed to call Abigail Calloway, a licensed social worker, who the government believed could qualify as an expert witness. Government counsel referred to regulations on the "practice of social work," stating that some types of licensed social workers may render profes-

---

1. The Hospitalization of the Mentally Ill Act, D.C.Code §§ 21–501 to –592 (2011 Supp.).

sional services involving "the diagnosis and treatment of psychosocial problems related to social work theory and methods." *See* D.C.Code § 3–1201.02(18)(A) (2011 Supp.). However, the government did not proffer which level of licensure the social worker had achieved, any information about her relevant education or experience, or details about her familiarity with Mr. Wyler.

The court excluded Ms. Calloway's proposed expert testimony regarding Mr. Wyler's mental illness and the likelihood that he would endanger himself or others if not hospitalized. The judge reasoned that a mental health expert must testify in proceedings seeking involuntary hospitalization, and "I don't think that the social worker would qualify." "[M]y reading of [the caselaw] is I need a psychiatrist or a psychologist ... to testify on the issue of dangerousness." When the government was unable to secure in-court testimony of a psychiatrist or psychologist, the court dismissed the case and Mr. Wyler was released. The court's order explained, in part: "No doctor present. Court will not allow social worker to qualify as an expert."

The District of Columbia appealed the ruling. At oral argument before this court, the government "stress[ed] the importance of this appeal for the District.... We believe that this will impact our ability to protect both the public and individuals by establishing probable cause[.]" It explains in one of its briefs that "[t]he introduction of expert testimony by licensed independent clinical social workers saves valuable resources by allowing psychologists and psychiatrists to treat patients rather than spending their days in court." Counsel for Mr. Wyler agreed "that there are very, very serious questions here," but noted that "a medical degree is different than a degree in social work" and that some types of social workers "are specifi-

cally prohibited from rendering diagnoses under the licensure statute." More fundamentally, Mr. Wyler contends, "the District's expert proffer was so minimal that the trial court had no choice but to refuse to qualify the government's witness as an expert."

## II. Right of Appeal

■ As a preliminary matter, we perceive no bar to a government appeal, such as this one, of a procedural ruling that only a psychiatrist or psychologist may testify on the issue of dangerousness in proceedings seeking involuntary hospitalization. The Ervin Act, which governs involuntary hospitalization of the mentally ill in the District of Columbia, is "significantly silent" regarding government appeals, and we have held "that the petitioner in an involuntary commitment proceeding ... has no right of appeal after a verdict is rendered in favor of the patient." *In re Lomax,* 386 A.2d 1185, 1186–87 (D.C.1978) (en banc). Following a full adjudication of the merits, any relief the government could receive in the form of a retrial "would be a nonsequitur because the issue would be the same as at an entirely new proceeding: the current mental state of the respondent, not the mental state at the time of the original trial." *In re Johnson,* 691 A.2d 628, 630 (D.C.1997) (citing *Lomax,* 386 A.2d at 1189). Rather, "when a hospital is unsatisfied with the final verdict in a commitment proceeding, the proper response is to start the entire process again with a new petition." *In re Barlow,* 634 A.2d 1246, 1249 n. 5 (D.C.1993).

■ Nevertheless, "the government retains a narrow channel of appeal in Ervin Act cases that implicate fundamental questions as to the procedure by which the statutorily prescribed hospitalization or commitment process is completed." *Id.* at 1249. In *In re Barlow,* the trial court

dismissed an emergency hospitalization petition before the presentation of evidence based on the court's interpretation of the twenty-four-hour deadline for holding a probable cause hearing. *Id.* We reasoned that "[w]ere the hospital to be denied the right of appeal in this instance, there would be no avenue for this court to review and resolve the inconsistent interpretations of § 21–525 presented in this case." *Id.* at 1248–49; *see also Johnson,* 691 A.2d at 631 (allowing appeal to consider whether and how a voluntary outpatient can be committed as an involuntary outpatient).

A decision to admit or exclude expert testimony ordinarily does not present a fundamental question of procedure. Here, however, the trial court essentially dismissed the case for want of prosecution. During preliminary discussions, government counsel asked whether, if a psychiatrist could not testify, the court "would dismiss the petition even if I put evidence on from the social worker." The court confirmed, "I would dismiss." The court's ruling was categorical in nature, and did not depend on the qualifications of Ms. Calloway as an individual. *See Johnson,* 691 A.2d at 630 ("As in *Barlow,* the trial court dismissed the petition on legal, not factual, grounds."). Moreover, the "fundamental" procedural issues raised by this appeal may affect the resolution of many future cases. *See Barlow,* 634 A.2d at 1249. The ruling here is thus "the kind of fundamental procedural question the government can appeal under *Barlow.*" *Johnson,* 691 A.2d at 631.

### III. Mootness

The trial court dismissed the proceedings against Mr. Wyler and the government is not seeking to re-hospitalize him. The government therefore concedes "that there is no current controversy relating to the merits of Mr. Wyler's emergency hospitalization" and that the case is "technically moot."

### A. General Principles

■ "The doctrine of mootness serves both to confine the power of the judiciary and to ensure that cases are decided on the basis of full argument on a developed record." *Hardesty v. Draper,* 687 A.2d 1368, 1370 (D.C.1997). "Our decisions thus require the exercise of careful discretion in deciding whether to reach the merits of a seemingly moot controversy." *Atchison v. District of Columbia,* 585 A.2d 150, 153 (D.C.1991). Indeed, "we will not normally decide questions that have become moot." *District of Columbia v. Group Ins. Admin.,* 633 A.2d 2, 12 (D.C. 1993).

The District of Columbia argues that we have authority to hear this appeal because the procedural question presented is "capable of repetition, yet evading review." *See, e.g., Johnson,* 691 A.2d at 631; *Barlow,* 634 A.2d at 1249; *In re Morris,* 482 A.2d 369, 372 (D.C.1984). The government has represented that it will continue to proffer social workers as expert witnesses, and so the trial court will likely encounter this unresolved procedural question in the future. *See Johnson,* 691 A.2d at 631 (citing *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam)). And due to "the very structure of the Ervin Act, under which 'the hospital is required to release the patient when a violation' of the brief statutory time limit occurs," any future appeals are also likely to become moot. *Id.*

■ "The issue before us, however, is not one of authority but of when—under what circumstances—the court should exercise its 'careful discretion to reach the merits of a seemingly moot controversy.'" *McClain v. United States,* 601 A.2d 80, 82 (D.C.1992) (quoting *Atchison,* 585 A.2d at

153) (internal editing omitted). Even, indeed especially, on important questions of law, "this court may not render in the abstract an advisory opinion." *Holley v. United States*, 442 A.2d 106, 107 (D.C. 1981).

### B. The Record on Appeal

In this case, the government's failure to proffer facts regarding its proposed expert's qualifications, and the resulting meager record before us, prevent us from deciding the primary question presented: whether social workers (or a limited class of social workers) may ever qualify as mental health experts in proceedings seeking hospitalization under the Ervin Act. We therefore decline to reach the merits of this important, but presently moot, question until it can be "decided on the basis of full argument on a developed record." *Hardesty*, 687 A.2d at 1370.

"The trial court has broad discretion to admit or exclude expert testimony." *Russell v. United States*, 17 A.3d 581, 585 (D.C.2011) (citing *Oliver v. United States*, 711 A.2d 70, 73 (D.C.1998)). However, "the exercise of discretion entails, first, recognition that there is discretion to be exercised, and then, after consideration of the correct legal factors, their reasonable application to the facts of the case before the court." *Benn v. United States*, 978 A.2d 1257, 1273 (D.C.2009) (citing *Johnson v. United States*, 398 A.2d 354, 361 (D.C. 1979)). "An informed choice among the alternatives requires that the trial court's determination be based upon and drawn from a firm factual foundation." *Johnson*, 398 A.2d at 364.

In determining whether to admit or exclude expert testimony, trial courts must consider whether the witness has "suffi-cient skill, knowledge, or experience in that field." *Dyas v. United States*, 376 A.2d 827, 832 (D.C.1977). However, the only information the government provided regarding its proposed expert on mental illness was that her name was "Ms. Calloway" and that she was a "licensed social worker." A *voir dire* was not requested or conducted to determine Ms. Calloway's education, training, or qualifications related to the diagnosis and assessment of mental illness. Nor did counsel proffer facts about the experience of social workers generally, on which the court could base its ruling.

Acknowledging that its counsel made "no proffer as to Ms. Calloway's background and expertise," the government asks this court to answer a much narrower question on appeal: whether "[t]he Superior Court committed error as a matter of law by holding, as a *per se* rule, that a licensed independent clinical social worker cannot qualify as an expert regarding the diagnosis of a mental illness or the likelihood that a mentally ill person will injure himself or others if not immediately hospitalized."

However, even this question requires consideration of facts not in the record before us. The District of Columbia grants four different levels of licenses to social workers. D.C.Code § 3–1208.01–.04 (2007). A person licensed under any of the first three levels may not render diagnoses of psychosocial problems without supervision.[2] D.C.Code § 3–1208.01–.03 (2007). The trial court never learned which level of social work licensure Ms. Calloway had obtained.

Only on appeal has the government clarified that Ms. Calloway is a *licensed independent clinical* social worker and that its argument against a *per se* rule of exclusion relates exclusively to that category of

---

**2.** No level of social work licensure permits the holder to "engage in the practice of medi-cine." *See* D.C.Code § 3–1201.02(18)(B) (2011 Supp.).

social workers. The designation of licensed independent clinical social worker, the most advanced of the four, requires "at least 3,000 hours of post-master's or postdoctoral experience participating in the diagnosis and treatment of individuals, families, and groups with psychosocial problems," which may include up to 1,500 hours of work supervised by a licensed psychiatrist or psychologist. D.C.Code § 3–1208.04 (2007).

At the outset of the hearing, government counsel invited the court's attention to D.C.Code § 3–1201.02(18)(A) (2011 Supp.), which defines the "[p]ractice of social work" to include "the diagnosis and treatment of psychosocial problems according to social work theory and methods." However, this statute alone is far from sufficient to apprise us whether licensed independent clinical social workers (or some of them) have the necessary qualifications to opine on the unusually complex and technical area of mental illness. *See, e.g., In re Melton,* 597 A.2d 892, 898 (D.C.1991) (en banc) (discussing expertise that may be necessary for Ervin Act hospitalizations); *Addington v. Texas,* 441 U.S. 418, 430, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (discussing the "subtleties and nuances of psychiatric diagnosis" that "render certainties virtually beyond reach in most situations").

The government represents that it will continue to proffer licensed independent clinical social workers as expert witnesses in Ervin Act proceedings. These future cases will allow the government to prepare a brief for the trial court, to present a more detailed proffer, and to request a thorough *voir dire* of the witness. Counsel should address any applicable laws or regulations on the authority of social workers to diagnose, assess, treat, and prescribe medication for mental illness.[3] In

addition, the government should provide the full background of its proposed witness, including his or her: 1) level of licensure; 2) coursework or specialized study regarding mental illness; 3) relevant practical training supervised by psychologists or psychiatrists; 4) knowledge of and experience with other means of rehabilitation, including psychotropic medication; 5) qualifications to assess the likelihood that a person will injure self or others; and 6) personal history and experience diagnosing and treating individuals with mental illness. It will be particularly helpful to know how much time the social worker has spent with the patient in question. The court may also seek an explication of "psychosocial problems" and their relationship to mental illness. *Compare* D.C.Code § 3–1201.02(18)(A) (2011 Supp.) ("Practice of social work" may include "diagnosis and treatment of psychosocial problems according to social work theory"), *with, e.g.,* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 31 (4th ed.2000) ("Axis IV: Psychosocial and Environmental Problems").

Because this information was not provided to the trial court, and thus is not in the record before us, we express no opinion on the qualifications of licensed independent clinical social workers generally (or Ms. Calloway specifically) to testify as expert witnesses in proceedings under the Ervin Act. We leave the resolution of that issue for a future appeal.

### IV.

This appeal is hereby dismissed as moot. *It is so ordered.*

---

**3.** Although various statutes and regulations govern the *practice* of social work in the District of Columbia, it is unclear to what extent

these laws restrict a trial court's authority to qualify an individual as an expert witness.