*Notice:  This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CV-0185

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES AFL-CIO, LOCAL 872, APPELLANT,

v.

DISTRICT OF COLUMBIA PUBLIC EMPLOYEE RELATIONS BOARD, APPELLEE.

and

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY, INTERVENOR.

Appeal from the Superior Court of the
District of Columbia
(2022-CA-002435-P(MPA))

(Hon. Shana Frost Matini, Trial Judge)

(Submitted April 24, 2024                          Decided August 8, 2024)

*Barbara B. Hutchinson* was on the brief for appellant.

*Geoffrey H. Simpson* and *Bruce A. Fredrickson* were on the brief for appellee.

*Tina M. Maiolo* and *Stephen G. Rutigliano* were on the brief for intervenor.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and HOWARD and SHANKER, *Associate Judges*.

HOWARD, *Associate Judge*: This case concerns negotiations over COVID-19 vaccination and return-to-work requirements between appellant American Federation of Government Employees AFL-CIO, Local 872 ("AFGE") and intervenor D.C. Water and Sewer Authority ("D.C. Water"). The vaccination and return-to-work requirements followed a COVID-19 public health emergency declaration by the Mayor and corresponding emergency legislation by the Council of the District of Columbia. Both have expired. In fact, since this litigation began, the District has rescinded its vaccination requirement and its employees have returned to work. We agree with appellee Public Employee Relations Board ("PERB") that there is no reasonable likelihood that D.C. Water will use two emergency authorities—D.C. Code §§ 1-617.08(a)(6) and 7-2304(b)(16)—to impose vaccination or return-to-work requirements without bargaining. We therefore dismiss this appeal as moot.

## I.     Background

We describe two applicable statutes before summarizing relevant factual and procedural history.

## A.      Statutory Framework

In 1978, the Council enacted the Comprehensive Merit Personnel Act to replace a "disjointed" and "decentralized" system with a "uniform" system for administering District of Columbia personnel matters. *See Coleman v. District of Columbia*, 80 A.3d 1028, 1031 (D.C. 2013) (summarizing history of the CMPA); D.C. Code § 1-601.02(a)(2) (describing purpose of the CMPA). Elements of the new, uniform system include a subchapter governing labor-management relations, *see* D.C. Code § 1-617.02 (describing scope and content), that, as relevant here, allows management "[t]o take whatever actions may be necessary to carry out the mission of the District government in emergency situations," *id.* § 1-617.08(a)(6). Only the PERB and labor-management parts of that system apply to employees of D.C. Water. *See* D.C. Code § 34-2202.15(a)(1) (making merit personnel system inapplicable to D.C. Water except for PERB and labor-management subchapters); *see also Am. Fed'n of Gov't Employees v. District of Columbia Water & Sewer Auth.*, 942 A.2d 1108, 1113 (D.C. 2007) (stating same).

In March 2020, the World Health Organization declared COVID-19 to be a pandemic; the Mayor then declared the COVID-19 pandemic to be a public health emergency. *See District of Columbia v. Towers*, 250 A.3d 1048, 1050-52 (D.C. 2021) (per curiam) (recounting history of the Mayor's public health emergency

declaration). The Council then enacted the COVID-19 Response Emergency Amendment Act of 2020, D.C. Act 23-247, 67 D.C. Reg. 3093 (Mar. 17, 2020) ("COVID-19 Emergency Act"). Section 301 of the COVID-19 Emergency Act amended D.C. Code § 7-2304(b) to state that, "[n]otwithstanding any provision of the [CMPA] . . . or any other personnel law or rules," the Mayor could take actions "regarding executive branch subordinate agencies that the Mayor determines necessary and appropriate to address the emergency." These actions included items like mandating telework or reassigning employees within or between agencies. *Id.*

### B.    Factual and Procedural History

About six months later, on September 1, AFGE and D.C. Water entered into a Memorandum of Agreement ("MOA") to address working conditions for AFGE employees. The next year, the MOA expired on September 30, 2021. The parties then bargained over working conditions. However, differences arose regarding "conditions for returning to work, availability of leave, administrative requirements related to the vaccinations, and notice to employees of a confirmed coronavirus."

Fifteen days after the MOA expired, on October 15, 2021, AFGE filed a Request for Expedited Impasse Resolution with PERB. The executive director of PERB referred the parties to mediation, which did not resolve the dispute. AFGE then asked PERB on November 16, 2021, to order interest arbitration. D.C. Water

moved to dismiss the request, contending that there was no impasse as to any of the terms at issue.

On January 13, 2022, PERB granted D.C. Water's motion to dismiss. PERB cited *D.C. Office of Labor Relations and Collective Bargaining v. D.C. Publ. Emp. Relations Bd.*, Civil Action No. 2020 CA 003086 P(MPA) (D.C. Super. Ct. Sept. 29, 2021) ("*OLRCB v. PERB*"), a Superior Court decision that concluded that the COVID-19 Emergency Act gave agencies a management right to enact personnel actions in emergency situations without bargaining. PERB concluded that the management right applied to D.C. Water's vaccination requirements, return-to-work policies, COVID-19 administrative leave policy, and impacts and effects of those policies. AFGE requested that PERB reconsider. PERB denied reconsideration, asserting that the disputed management rights were non-negotiable.

AFGE then petitioned for review in Superior Court, which dismissed the petition on February 14, 2023. The trial court first stated that while D.C. Water is an "independent authority of the District government," *see* D.C. Code § 34-2202.02, the labor-management provisions of the CMPA apply to D.C. Water. *See* D.C. Code § 34-2202.15(a)(1). Agreeing with PERB, the trial court concluded that the COVID-19 Emergency Act "specifically alters the labor-management rights and relations during the COVID-19 pandemic for all covered entities, including [D.C.

Water]," and that PERB had reasonably interpreted the COVID-19 Emergency Act and the CMPA in concluding so. Put another way, because "[t]he management rights in emergency situations include the management rights listed in the Act," PERB did not err in dismissing AFGE's claims concerning vaccination requirements or return-to-work procedures.[1]

This appeal followed. On April 19, 2024, we sua sponte asked the parties to file supplemental briefs addressing whether this matter is moot.

## II.     Standard of Review

Ordinarily, when we consider an appeal from a Superior Court review of a PERB decision, we review the PERB decision directly and are not required to accord deference to the trial court's decision. *See Am. Fed'n of Gov't Emps. Nat'l Office v. D.C. Pub. Emp. Relations Bd.*, 237 A.3d 81, 85-86 (D.C. 2020) ("Although this is an appeal from a review of an agency action by the Superior Court . . . , we review the PERB decision as if the matter had been heard initially in this court.") (quoting *Gibson v. D.C. Pub. Emp. Relations Bd.*, 785 A.2d 1238 (D.C. 2001)); *Am. Fed'n of*

---

[1] The trial court also declined to consider two arguments it concluded AFGE had not raised before PERB: that the vaccination requirement violated the law and that any authority granted under the Act had expired since. Since we hold that this case is moot, we do not address whether these arguments were properly preserved.

*State, Cnty., & Mun. Employees, Dist. Council 20, Local 2087, AFL-CIO v. Univ. of the Dist. of Columbia*, 166 A.3d 967, 972 (D.C. 2017) ("Accordingly, while we respect the trial court's decision, we are not required to accord legal deference to its ruling."). We would normally also engage in a "limited" review and sustain the decision if it were supported by "substantial evidence in the record as a whole and not clearly erroneous as a matter of law." *Neill v. D.C. Pub. Emp. Rels. Bd.*, 234 A.3d 177, 182 (D.C. 2020) (internal quotations omitted).

However, in this case we do not reach the merits of PERB's decision and instead focus on mootness. "We review the issue of mootness, a question of law, de novo." *Silberberg v. Becker*, 191 A.3d 324, 331 (D.C. 2018) (citing *Fraternal Order of Police, Metro. Labor Comm. v. District of Columbia*, 82 A.3d 803, 814 (D.C. 2014)).

## III. Discussion

We conclude that this appeal is moot because the challenged policies are no longer in place. Even if they were, AFGE has not shown that the challenged provision of the Comprehensive Merit Personnel Act still applies beyond the District's COVID-19 emergency authorities. Nor has AFGE shown that this case raises issues of "broad importance" that would warrant us deciding the case on the merits. *Atchison v. District of Columbia*, 585 A.2d 150, 154 (D.C. 1991).

### A.    Vaccination and Return-to-Work Requirements

AFGE challenges D.C. Water's imposition of vaccination and return-to-work requirements. Our mootness determination comes from the fact that neither of these requirements appears to be in place.

As an Article I court, we are "not bound by 'Article III's strictures to resolve only cases or controversies,'" but "we typically 'hew closely to the jurisdictional decisions of Article III tribunals' resolving issues of mootness." *Re'ese Adbarat Debre Selam Kidest Mariam Ethiopian Orthodox Tewahedo Church, Inc. v. Habte*, 300 A.3d 784, 794 (D.C. 2023) (quoting *In re Bright Ideas Co., Inc.*, 284 A.3d 1037, 1042 n.4 (D.C. 2022)) (internal quotation marks omitted). While "even the availability of a partial remedy is sufficient to prevent a case from being moot," *id.* (internal quotations omitted), "a pending appeal generally becomes moot when there occurs an event that renders the relief sought by a party impossible or unnecessary," *L.S. v. D.C. Dep't on Disability Servs.*, 285 A.3d 165, 172 (D.C. 2022) (citing *Classic CAB v. D.C. Dep't of For-Hire Vehicles*, 244 A.3d 703, 705 (D.C. 2021)); *see also Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240-41 (2024) (stating same).

Three intervening events have occurred that render this appeal moot. First, the District rescinded its vaccination requirement in September 2022. *I-2022-13,*

*COVID-19 Vaccination Requirements (September 2022 Update)*, D.C. Dep't of Hum. Res. (Sept. 14, 2022), https://edpm.dc.gov/issuances/covid-19-vaccination-requirements; https://perma.cc/E9YR-56UE (last visited June 5, 2024). Second, the Board claims—and AFGE does not dispute—that "all employees have returned to work."[2] Third, the emergency authority for D.C. Water's vaccination and return-to-work procedures expired on February 4, 2022. *See* Coronavirus Support Temporary Amendment Act of 2021, D.C. Law 24-9, § 1004(b), 68 D.C. Reg. 6913 (July 16, 2021) (setting expiration date). These facts guide our conclusion that "the issues presented are no longer live." *Habte*, 300 A.3d at 794 (quoting *Geary v. Nat'l Newspaper Publishers Ass'n*, 279 A.3d 371, 372 (D.C. 2022)).

### B.     Comprehensive Merit Personnel Act

In turn, we disagree with AFGE's primary claim in its supplemental briefing: that PERB could conclude at some future point that the CMPA allows an employer to take "unilateral" emergency action without bargaining. This, AFGE contends, presents a wrong "capable of repetition yet evading review." *Bright Ideas,* 284 A.3d

---

[2] AFGE states D.C. Water "placed bargaining unit employees on unpaid leave, on March 7, 2022" and implemented "flexible work schedules . . . without bargaining with [AFGE]." We are unable to identify from these passing references whether AFGE opposes D.C. Water's statement that employees have returned to work.

at 1046 (citation omitted); *see also In re D.D.*, 303 A.3d 935, 937 n.4 (D.C. 2023). That exception to mootness applies where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *In re Taylor*, 241 A.3d 287, 299 (D.C. 2020) (quoting *In re Barlow*, 634 A.2d 1246, 1249 (D.C. 1993)); *see also Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007) (stating same). Neither AFGE nor PERB has addressed the duration of the vaccination or return-to-work requirements; rather, this dispute centers on whether the conduct AFGE alleges can recur.

That appears unlikely. With the COVID-19 emergency authorities now rescinded, there does not appear to be a reasonable expectation that D.C. Water could act under the emergency powers paragraph of the CMPA to avoid negotiating return-to-work or vaccination requirements with AFGE. These requirements followed the "issuance of an emergency executive order by the Mayor," D.C. Code § 7-2304(b) (2021), which appears to have activated the management rights D.C. Water asserted, such as the rights to set leave, *see id.* § 7-2304(b)(16)(K), tours of duty, *id.* § 7-2304(b)(16)(B), or place of duty, *id.* § 7-2304(b)(16)(C). Without that order still in effect, D.C. Water cannot reassert the management rights listed in Section 7-2304(b)(16), which contains the balance of those rights—because, if nothing else,

Section 7-2304(b)(16) expired with the end of the emergency legislation. *See* Coronavirus Support Temporary Amendment Act of 2021, D.C. Law 24-9, §§ 507, 1004(b), 68 D.C. Reg. 6913 (July 16, 2021) (adding Section 7-2304(b)(16) as part of temporary emergency legislation). And the vaccination requirement, which D.C. Water appears to have imposed under D.C. Code § 1-617.08(a)(6) as an action "to carry out the mission of the District government in [an] emergency situatio[n]," also appears unlikely to recur.[3] That is because PERB also grounds authority for this requirement in the expired COVID-19 Emergency Act. In short, AFGE has not shown why D.C. Water could reasonably be expected to skip negotiating return-to-work and vaccination requirements now that the emergency authorities that permitted that skipping are gone.

## C. "Matters of Importance" and Mootness

Finally, while this court has occasionally declined to apply a "strict rule of mootness," *Tyler v. United States*, 705 A.2d 270, 273 (D.C. 1997) (en banc), where cases have concerned "a matter of importance" that "extends beyond 'the particular

---

[3] Later in its briefing, PERB asserted that D.C. Water imposed proof of vaccination and testing requirements under its management rights. *See* D.C. Code § 7-2304(b)(16)(B), (C), (G). Subparagraph (G) was a catch-all provision allowing an agency to "[a]ssig[n] additional duties to employees." Regardless of whether vaccination was required under section 1-617.08(a)(6) or 7-2304(b)(16), both relied on the now-expired COVID-19 Emergency Act.

appellant . . . to others similarly situated,'" *Bright Ideas*, 284 A.3d at 1046 n.10 (quoting *Tyler*, 705 A.2d at 273), we conclude that this is not such a matter with respect to AFGE's Section 1-617.08(a)(6) claims. In *Atchison v. District of Columbia*, we did not dismiss as moot a challenge to the Council's authority to repeal or substantially amend a law providing a right to adequate overnight shelter that was generated by a ballot initiative, even though the Council had repealed the law at issue. 585 A.2d at 154. Because we considered the Council's power to amend legislation from ballot initiatives to be an issue of "broad importance," we anticipated "another . . . predictable round of trial litigation" on the ballot initiative, and we kept in mind that decisions about mootness ultimately seek "to promote sound judicial economy," we proceeded to decide the appeal on the merits. *Id.* (citation omitted); *see also, e.g.*, *Tyler*, 705 A.2d at 273 (deciding merits on issue of pretrial detention even after appellant had pled guilty); *Teachey v. Carver*, 736 A.2d 998, 1003 (D.C. 1999) (deciding merits of appeal on mandatory parole violator warrants because "recurrence of the issue here presented is inevitable"). Here, while AFGE argues that "[t]he emergency actions authorize[d] by D.C. Code § 1-617.08(a)(6)[] can arise under any circumstances," we do not find an issue of broad importance that could recur, nor do we sense a judicial economy concern.

While the language of Section 1-617.08(a)(6) might apply in a future emergency, PERB has not argued for its applicability beyond the COVID-19

pandemic. Rather, PERB itself has only made this case about the "precise interplay and extent of the defunct COVID Emergency Response Act and the CMPA." In fact, *OLRCB v. PERB* appears to have focused on management authority to address the COVID-19 emergency specifically. This leads us to disagree with AFGE's argument that PERB's decision allows D.C. Water "unilateral authority to implement changes in working conditions[] when an emergency exists and even when no emergency exists."[4] And unlike the judicial economy concern that arose in *Atchison*, which followed nearly a decade of litigation to enforce a voter-approved ballot initiative, *see* 585 A.2d at 151, we see no such concern here.[5]

---

[4] In its supplemental briefing, AFGE claimed that "on January 31, 2022, the Authority implemented a mandatory vaccination requirement . . . . The action is pending in the U.S. District Court, District of Columbia, *Lucas et. al. v. D.C. Water and Sewer Authority, C.A.*, No. 22-cv-0677 (D.D.C. March 11, 2022)." But the record in this appeal does not reflect that AFGE raised an alleged January 2022 vaccine requirement before PERB or the trial court, so we decline to consider it here. *See Wong v. District of Columbia*, 314 A.3d 1236, 1243 (D.C. 2024) (declining to consider issue not raised before reviewing agency).

[5] In fact, the only other division of this court to have considered management rights under Section 1-617.08(a)(6) has similarly concluded that those rights depended on the expired COVID-19 Emergency Response Act. *See Am. Fed. of Gov't Emps., AFL-CIO, Local 631 v. D.C. Pub. Emps. Relations Bd.*, No. 22-CV-0605, Mem. Op. & J. at 5 n.3 (D.C. June 14, 2024).

### D. Vacatur

Finally, we decline to vacate the decision of the trial court and, ultimately, PERB, since "vacatur is not an automatic right, but rather an equitable remedy." *Lewis v. Hotel & Rest. Emps. Union, Loc. 25, AFL-CIO*, 727 A.2d 297, 299 (D.C. 1999) (citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994)); *see also Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 18 (2023) (Jackson, J., concurring) (explaining that vacatur exists to "address any unjust circumstances or unfairness that might stem from the inability to appeal a particular lower court decision," but that "the party seeking relief from the status quo of the appellate judgment bears the burden of establishing equitable entitlement to this extraordinary remedy") (internal quotation marks and citations omitted).

When this court has considered whether the mootness of an appeal can lead to vacatur of a trial court opinion, the "principal factor" we looked to was "whether the party seeking relief from the judgment [] caused the mootness by voluntary action." *Lewis*, 727 A.2d at 279 (citations omitted). In *Lewis*, we vacated a moot trial court ruling after the Council of the District of Columbia passed legislation that mooted the ruling. 727 A.2d at 301-02. The Council had not passed legislation to avoid an "unfavorable judicial precedent," and granting vacatur served the public interest by avoiding an unnecessary ruling on a constitutional issue. *Id.* The appellee

union maintained that vacatur would be contrary to the public interest because vacatur would "deprive the legal community of a valuable precedent." *Id.* at 302 (internal quotations omitted). But we disagreed since the trial court's order was not published, Superior Court orders are "never binding authority in other cases, even in the Superior Court itself," and the U.S. Supreme Court has "never suggested . . . that the precedential value of a decision alone renders vacatur inappropriate." *Id.*

In this case, however, the public interest counsels toward a different conclusion. Unlike the trial court decision in *Lewis*, the Superior Court decision here affirmed a decision of the PERB, which has a "special competence" to interpret the CMPA, *Neill*, 234 A.3d at 182-83 (internal citations and quotation marks omitted). And PERB precedent may guide both PERB and Superior Court decisions, *see Gibson*, 785 A.2d at 1243. In fact, in this case, the PERB—in the absence of guidance from this court—relied on a Superior Court decision in *OLRCB v. PERB*. Here, then, it will serve the public interest to let stand the trial court's specific conclusion—derived from its own interpretation of a PERB opinion, and upholding another PERB opinion—that the management rights exercised here were invoked under specific COVID-19 authorities. So, even though a trial court decision is not precedential, *see Lewis*, 727 A.2d at 302 (citations omitted), we conclude that letting the trial court decision here stand may guide future PERB interpretations of the CMPA.

We therefore cannot agree with AFGE that the trial court decision should be vacated.  While "a party who is deprived of the opportunity to appeal due to mootness . . . might feel that loss acutely," there is "nothing inherently inequitable about not being able to pursue an appeal." *Acheson Hotels*, 601 U.S. at 20 (Jackson, J., concurring).

## IV.  Conclusion

For the foregoing reasons, the appeal is dismissed as moot.

*So ordered.*